NECHTOW v. BROWN.

1. ADVERSE POSSESSION—REGULAR USE OF PROPERTY AS SUMMER HOME.

Regular use of property as a summer home and for recreational purposes is sufficient basis for a claim of adverse possession.

2. SAME—EVIDENCE.

*De novo* review of record on appeal in suit to establish property line, remove cloud on title, and to enjoin interference with peaceful possession of certain summer resort property *held*, to show plaintiffs had occupied premises involved, a strip of land some 10′ wide and over 35′ long, for a period in excess of 15 years prior to commencement of suit.

---

REFERENCES FOR POINTS IN HEADNOTES
[1] 3 Am Jur 2d, Adverse Possession §§ 57, 69.
Adverse Possession: sufficiency, as regards continuity, of seasonal possession other than for agricultural or logging purposes. 24 ALR2d 632.
[2] 3 Am Jur 2d, Adverse Possession §§ 248–253.
[3] 17A Am Jur, Easements § 124.
[4] 34 Am Jur, Limitation of Actions § 418.

3. LICENSES—PARKING—SUMMER RESORT PROPERTY.
   Defendants' claim that plaintiffs had agreed to permit defendants to park on rear of hilly summer resort property owned by plaintiffs *held,* not substantiated.

4. LIMITATION OF ACTIONS—COMPROMISE AND SETTLEMENT.
   Efforts or statements, made by parties in attempting a settlement of dispute as to property line, after the dispute had arisen do not interrupt the running of the statute of limitations.

Appeal from Berrien; Hadsell (Philip A.), J. Submitted December 13, 1962. (Calendar No. 126, Docket No. 49,256.) Decided March 7, 1963.

Bill by Mitchell J. Nechtow and Marian F. Nechtow against Fred Brown and Berdine D. Brown to establish property line, remove cloud on title and enjoin interference with peaceful possession. Decree for plaintiffs. Defendants appeal. Affirmed.

*Killian, Spelman & Taglia,* for plaintiffs.

*Gore & Williams,* for defendants.

KELLY, J. Plaintiffs' action in the Berrien county circuit court claiming title by adverse possession to a strip of land approximately 10 feet wide and 65 feet long resulted in a decree awarding the property to plaintiffs. Defendants appeal, claiming the court erred in deciding that the evidence was sufficient to prove adverse possession and, also, in denying introduction of evidence in regard to the efforts of settlement between the parties.

Lots 6, 7, and 8 are 40-foot lots, off Ponchartrain drive, Michiana shores, Berrien county, Michigan, and are 150 feet in depth.

Plaintiffs purchased lot 7 on May 18, 1943, and the following year purchased lot 8, adjoining on the west. Defendants purchased lot 6, adjoining plaintiffs' lot on the east, in July, 1958.

Plaintiffs improved lot 8 by clearing and black-topping a part of it for parking purposes and this lot is involved in this dispute only because of defendants' claim that plaintiffs agreed to allow them to park on lot 8.

Michiana shores is located close to Lake Michigan and this property is commonly known as "summer" or "vacation" property, with a number of Chicago residents owning the property, including both plaintiffs and defendants. In the application of the rule of adverse possession, regular use of property as a summer home and for recreational purposes is sufficient basis for a claim of adverse possession.*

Plaintiff Mitchell J. Nechtow is a practicing physician living in Chicago. Since the purchase, his wife and 2 daughters have resided in the Michiana property during the summer months and the doctor joins them on weekends and spends vacation periods with them.

There is no building line and defendants' house is built on the front of their lot and much closer to Ponchartrain drive than plaintiffs' house, which is built toward the rear.

The area is rather hilly and plaintiffs' lots, as well as defendants' lot, slope down from the front to the rear and defendants had to cut down the slope of their lot in order to have a place to park their car. When plaintiffs purchased lot 7, defendants' lot 6 was not cleared in the rear portion but was covered with brush and trees, and a similar situation existed in regard to lot 8.

The east side of plaintiffs' house is 10 feet west from their east lot line and the survey of lots 6, 7, and 8 that was introduced (plaintiffs' exhibit 1) shows a concrete walk starting at the center of plaintiffs' lot at Ponchartrain drive, then proceeding south

---

. * 3 Am Jur 2d, Adverse Possession, § 57, p 146.

and turning southeast as it passes between plaintiffs' house and their east lot line, then veering southeast about at the center of plaintiffs' house (at a point still on plaintiffs' property) and finishing with 3 cement steps to a level of the ground 35.05 feet north of plaintiffs' south lot line. These stone steps are 10 feet east of defendants' west lot line, as shown on the survey, and this 10 feet and the 35 feet extending to plaintiffs' and defendants' south lot lines constitute the main area in dispute.

Dr. Nechtow testified that when he and his wife purchased this property there was constructed thereon the concrete walk and the steps leading down to the ground level 35 feet north of the south lot line, as shown on the survey (plaintiffs' exhibit 1).

Four neighbors, who owned property and had annually been summer residents for 18 years or more, corroborated plaintiff's testimony that the cement walk and steps as shown on the survey were on the lot when plaintiffs purchased.

Mrs. Cohen, who sold the property to plaintiffs in 1943 and then moved to Chicago, testified that when she returned to Berrien county to testify she examined the property and noticed it had been changed, claiming there was no concrete walk culminating at the south end with steps when she sold the property to plaintiffs.

Plaintiff testified that when he purchased lot 7, the portion now in dispute was a well-defined area of dirt sprinkled with stones; that it led into the rear basement door; that Mrs. Cohen's real-estate agent, Mr. Hoelting, informed him at the time of purchase that this area was included in his property; that he continuously used it from the time of purchase, with the belief that it was part of his property, not only to enter his basement door but as a work area for the removal of garbage, et cetera; that no one ever challenged his ownership or right to use or posses-

sion prior to defendants' purchase of lot 6. Plaintiff's testimony in regard to the area, walk and steps was corroborated by the 4 neighbors mentioned above and is challenged only by Mrs. Cohen, who testified that when she sold the property there was no walk, no steps, and no area as described by plaintiff— everything ·was just grass and mud.

We disagree with appellants' contention that the proof of adverse possession is limited to 14 years, namely the period of time elapsed after plaintiffs concreted the disputed area. The proofs support plaintiffs' claim that all they did was to place concrete over an area that was well defined at the time of purchase. The concrete merely accentuated the area but did not establish or enlarge it.

In regard to the discrepancy between Mrs. Cohen's testimony and that of plaintiff and his neighbors, both in respect to the existence of the walk and the area, we conclude that from the record we cannot accept Mrs. Cohen's version.

The trial court held that the evidence "shows conclusively" that plaintiffs have "occupied the premises for a period in excess of 15 years prior to the time of the filing of the bill of complaint herein." Reviewing the record *de novo,* we arrive at the same conclusion as the trial court.

Defendant Fred Brown claims that the real-estate agent told him they had permission to park on plaintiffs' lot 8. The agent's testimony does not confirm this fact, and nothing in the record discloses any effort on defendants' part to ascertain from plaintiffs, or any one else, whether the agent had any right to make such claimed statement.

Both defendants testified that on the first day they drove to their property they parked their car upon plaintiffs' parking lot and that plaintiffs agreed to their use of the lot. Plaintiffs absolutely and un-

equivocally deny any such agreement with defendants.

We find no error in the court's ruling in regard to efforts or statements made in attempting a settlement after this dispute arose, and call attention to our decision in *Smith* v. *Feneley,* 240 Mich 439, where we held:

"Where an adverse claimant secured a quitclaim deed from the owner of record for the purpose of quieting her title, to prevent litigation, or to make her title a record title, the securing of said deed did not interrupt the running of the statute; there being no recognition of superior title in the owner." (Syllabus 4.)

The decree of the lower court is affirmed. Costs to appellees.

CARR, C. J., and DETHMERS, BLACK, KAVANAGH, SOURIS, and OTIS M. SMITH, JJ., concurred.

O'HARA, J., took no part in the decision of this case.