475 P.2d 1

Joseph W. KAY and Georgia A. Kay, his wife, and Transamerica Title Insurance Company, an Arizona corporation, Rose B. Nash, a widow, Frank Ziede and Ann Ziede, his wife, Tom Ajamie and Evelyn Ajamie, his wife, Edgar T. Ajamie, a single man, Albert Felix, a single man, and Amil J. Ajamie, a single man, Appellants,

v.

Fred S. BIGGS and Zula Biggs, his wife, Appellees.

No. 1 CA–CIV 1106.

Court of Appeals of Arizona,

Division 1,

Department B.

Oct. 5, 1970.

Denzil G. Tyler, Winslow, for appellants.

Axline & Johnson, Holbrook, and Johnson, Shelley, Roberts & Riggs, by J. La-Mar Shelley, Mesa, for appellees.

EUBANK, Presiding Judge.

This appeal is brought by the defendants Joseph W. and Georgia A. Kay, husband and wife, and the Transamerica Title Insurance Company, together with the third-party defendants, Rose B. Nash, et al., as appellants and hereafter referred to as defendants and third-party defendants, respectively, from a judgment quieting title by adverse possession in the plaintiffs, Fred S. and Zula Biggs, husband and wife, appellees herein and hereafter referred to as plaintiffs, to a disputed parcel of real property located approximately two miles south of Lakeside in Navajo County, Arizona, described as follows:

Beginning at a point 955.0 feet West (Bearing given by G.L.O. Notes) of the Northeast corner of the Northwest Quarter of Section 6, Township 8 North, Range 23 East of the Gila and Salt River Base and Meridian, and on the North line of said Section 6; running thence West 56.4 feet; thence South 0°20'20" East 40 rods (66.0 feet); thence East 51.0 feet; thence North 0°09'50" East 40.0 rods (660.0 feet) to the point of beginning.

The disputed parcel of land adjoins plaintiffs' deeded land on its western boundary line and is approximately rectangular in shape, being approximately 56 feet wide on the north and south sides and 660 feet long on the east and west sides.

The plaintiffs filed their complaint against the defendants to quiet title (A.R.S. § 12–1101, et seq.) alleging that they were the owners in fee simple estate of the disputed parcel of land by virtue of their adverse possession of it for more than ten consecutive years. They further alleged damages for the defendants' wrongful removal of their boundary line fence and, in addition, asked that attorney's fees be awarded them for defendants' refusal to execute a quit-claim deed when tendered as authorized by A.R.S. § 12–1103.

Defendants answered denying the allegations of the complaint, affirmatively claiming ownership of the disputed parcel of land and admitting that they refused to execute the proffered quit-claim deed. In addition to their answer, the defendants filed a third-party complaint against Rose B. Nash, a widow, and the other parties listed after her name in the caption, alleging that the defendants had acquired the disputed parcel from the third-party defendants by warranty deed and that in the event the plaintiffs were successful in the quiet title action the third-party defendants would be liable to them for a breach of warranty of title. Following the denial of reciprocal motions for summary judgment the matter was tried to the court sitting without a jury.

The trial court entered judgment quieting title in the plaintiffs and awarding them attorney's fees and costs. In a separate judgment, the trial court awarded the defendants judgment against the third-party defendants for the loss of the disputed parcel of land and the attorney's fees and costs awarded plaintiffs in the primary judgment. Neither side requested the Court to make Rule 52, Rules of Civil Procedure, 16 A.R.S., findings of fact and conclusions of law, and none were made. Defendants and third-party defendants appeal from both judgments.

Defendants and third-party defendants raise seven questions for our consideration on appeal. The first five deal with sufficiency of the evidence to sustain the judgment questions. Due to the fact that the trial court, sitting without a jury, made no findings of fact or conclusions of law and that the parties requested none, all inferences supported by the evidence must be drawn in favor of the plaintiffs and the two judgments. Rosen v. Hadden, 81 Ariz. 194, 303 P.2d 267 (1956); Gardner v. Royal Development Co., 11 Ariz.App. 447, 465 P.2d 386 (1970). The last two questions deal with the propriety of the trial court's

determination of attorney's fees and the allegation of an error in law or of an abuse of discretion in setting the fee.

Taking the first five questions relating to the sufficiency of the evidence and construing all inferences in favor of the judgment, we find that in 1937 the real property owned by the plaintiffs and defendants, including the disputed parcel, were combined into a single tract owned by Mr. Hans Hanson. In that year the plaintiffs negotiated with Mr. Hanson for the purchase of a 2-acre parcel of land. In order to establish the west boundary line of the 2-acre parcel, Mr. Hanson pointed out a "witness tree" and measurements were made from it to the boundary line by means of a "surveyor's chain" and transit. The boundary line thus located was in error and included the disputed parcel of land within plaintiffs' 2-acre tract. At that time Mr. Hanson, the plaintiff-husband, the plaintiff-husband's brother and other witnesses present were satisfied that the true boundary line had been located. Thereafter a fence was erected confirming the boundary line as located and inclosing the disputed parcel within the plaintiffs' boundary fence. After some delay the plaintiffs obtained a deed to the 2-acre parcel in 1940, which did not include the disputed parcel of land within the description of land deeded to plaintiffs.

The plaintiffs used the property for a summer home, physically occupying it for only two to three weeks each year. On the disputed parcel of land they erected and maintained the boundary line fence, cultivated the land several times, planted apple trees which they pruned and harvested over the years, built and moved an outhouse several times, piled and stored wood, removed stumps, and in general fully occupied and used the property two to three weeks each year. Immediately adjacent to the disputed parcel, plaintiffs built a cabin in 1946 and resided there when visiting the property. Plaintiffs' possession and control of the disputed parcel continued uninterrupted and unquestioned for almost thirty years until some time after May 27, 1965, when the defendants purchased the real property west of plaintiffs from the third-party defendants and had the property surveyed. The survey showed that the disputed parcel was occupied by the plaintiffs and the defendants requested them to vacate the disputed area. When plaintiffs refused to do so, defendant Joseph Kay physically removed the old established boundary line fence himself in the winter of 1966 without plaintiffs' consent or knowledge. Mr. Kay then constructed a new boundary line fence 50 plus feet east of the old fence in order to include the disputed parcel, including a row of plaintiffs' apple trees, within his own fence lines. There is no dispute that the real estate taxes on the disputed parcel were paid by the defendants and their predecessors in title.

Defendants and third-party defendants contend, in effect, that the foregoing fails to establish adverse possession as a matter of law for the reason that two or three weeks physical occupancy each year does not establish the element of peaceful possession or continuous possession required to perfect title by adverse possession. They cite no case law supporting this position and we disagree with their contention.

■ "Adverse Possession" is defined by A.R.S. § 12–521, subsec. A (1) as meaning "* * * an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another.", while "peaceable possession" is defined at A.R.S. § 12–521, subsec. A (2), as, "* * * possession which is continuous, and not interrupted by an adverse action to recover the estate." These two definitions are applicable to the 10-year statute of limitation, A.R.S. § 12–526, subsec. A which reads as follows:

"A person who has a cause of action for recovery of any lands, tenements or hereditaments from a person having *peaceable* and *adverse possession* thereof, cultivating, using and enjoying such property, shall commence an action therefor within ten years after the cause of action accrues, and not afterward." (emphasis added)

Neither A.R.S. § 12–521, subsec. A (1) nor § 12–521, subsec. A (2) sets any specific time requirement for physical bodily presence which must be complied with in order for a claimant to claim the continuous possession required to perfect title by adverse possession. "Possession" as used in 12–521, subsec. A is not synonymous with the physical bodily presence of the adverse claimant. Continuous bodily presence is not required. Rather, the question is one of fact which must be determined from the circumstances of each case. Spillsbury v. School District No. 19, 37 Ariz. 43, 288 P. 1027 (1930).

In a boundary line fence case, Rorebeck v. Criste, 1 Ariz.App. 1, 398 P.2d 678 (1965), this court, discussing peaceable and adverse possession, said:

"We would point out that the occupancy by the plaintiff, to be exclusive, does not have to take the form of any particular type of occupancy. Of course, the more nearly absolute his exclusiveness is, the stronger his position. *But all the plaintiff must show is that he occupied or used the land as would an ordinary owner of the same type of land taking into account the uses for which the land was suitable.* (citation) Land which was used ten years ago as farm land may be primarily residential ten years later. The law does not require that a party having occupied the land as farming land must continue to farm the said land for ten years for adverse possession to ripen into title. All that is necessary is that he occupy and use the land as would

a normal owner of the land taking into consideration the changing uses for which the property in the general neighborhood may be put." 1 Ariz.App. 5, 398 P.2d 682. (emphasis added)

In the similar factual case to the one at bar of Cowan v. Hatcher, 59 S.W. 689 (Tenn. Ch.App., 1900), the court held that the adverse possession element of continuous use was proven where the evidence established that the claimant went upon the land to make personal use of a mineral spring, built a cabin, cleared one and one-half acres of land, fenced it, planted fruit trees, constructed a stable and spent two to four weeks each summer at the cabin with his family for the statutory period. See the cases collected in 24 A.L.R.2d 632 (annotation: Adverse Possession, sufficiency as regards continuity of seasonal possession other than Agricultural or logging purposes), and in 3 Am.Jur.2d, Adverse Possession, §§ 56, 57, pp. 145, 146. See also Kraus v. Mueller, 12 Wis.2d 430, 107 N.W.2d 467 (1961) where the continuous occupancy of a hunting shack during hunting season was sufficient exclusive possession; Nechtow v. Brown, 369 Mich. 460, 120 N.W.2d 251 (1963) where the use of property for a summer home for recreational purposes was sufficient adverse possession; Mahoney v. Heebner, 343 Mass. 770, 178 N.E.2d 26 (1961) where even seasonal physical absence from a summer residence did not break the chain of continuous peaceable possession for the purpose of establishing adverse user; and Booten v. Peterson, 47 Wash.2d 565, 288 P.2d 1084 (1955) where weekend summer use of a beach place was held sufficient to establish peaceable adverse possession to an adjacent parcel of real property used for a recreation center and camping.

■ Under the facts of this case, it cannot be said that the plaintiffs failed to treat the disputed parcel of land "as would an ordinary owner of the same type of land." They built a summer home in an

area where there were other such homes and used it exclusively as such for almost thirty years. They physically erected a fence and buildings and dealt with the disputed parcel as if they were the owners. These facts satisfy the early requirements of "actual" and "visible" possession discussed in Costello v. Muheim, 9 Ariz. 422, 428, 84 P. 906 (1906). In the Costello case the Supreme Court accepted as the law in Arizona the proposition that neither actual occupancy nor cultivation nor residency was necessary to constitute actual possession, and that the acts necessary to constitute peaceful possession were necessarily varied depending upon the circumstances of each case. Holding that the facts were insufficient in Costello to apply the rule, the court did apply it, however, in Spillsbury v. School District No. 19, supra, by affirming the school district's acquisition of an acre of real property by such adverse possession.

Under the facts and circumstances of this case we hold that the evidence establishing two or three weeks continuous physical presence coupled with the other facts in this case is sufficient to establish the "continuous peaceable possession" and the "adverse" claim element required by the statute. Consequently, the evidence is sufficient to support both judgments.

■ It is not material under the facts of this case that the original boundary line was established by mistake. See Trevillian v. Rais, 40 Ariz. 42, 9 P.2d 402 (1932); Higginbotham v. Kuehn, 102 Ariz. 37, 39, 424 P.2d 165 (1967). As stated in Trevillian, pp. 45, 46, 40 Ariz. and pp. 402, 403, 9 P.2d:

" 'Where a person, acting under a mistake as to the true boundary line between his land and that of another, takes possession of land of another believing it to be his own, up to a mistaken line, claims title to it and so holds, the holding is adverse and, if continued for the requisite period, will give title by adverse possession. And the fact that on taking possession he had no intention of taking what did not belong to him, or claimed that he had no desire or intention to take any land belonging to the adjoining owner, or that he would have surrendered possession if he had known that the land in dispute was not within the calls of his deed, or that the owner of the record title was ignorant of the location of the true boundary line or of the fact that the land was his, or supposed that the adverse occupant intended to claim only what he actually owned, or the fact that both owners were mistaken as to the true boundary line, does not affect the operation of the rule. * * * In all cases the intention and not the mistake is the test by which the character of the possession is determined, it being *prima facie* sufficient that actual, visible, and exclusive possession is taken under a claim of right without reference to the fact that the possession was based on mistake.' "

■ The last two questions on appeal deal with the trial court's determination and award of attorney's fees. The defendants contend that the award of $750 attorney's fees to the plaintiffs was an abuse of the trial court's discretion because the plaintiffs presented no evidence on the question of attorney's fees prior to resting and the defendants and third-party defendants were not afforded an opportunity to be heard on the issue. The record reveals the affidavit of plaintiffs' counsel filed after the trial detailing billed time at 21.9 hours. There is no additional affidavit detailing the length of trial or post-trial efforts in preparing and protecting the judgment, although the court could take judicial knowledge of that. No contention is made that the amount awarded was unreasonable. This court has held that under our quiet title law (A.R.S. § 12–1101 et seq.), an attorney's fee award under A.R.S. § 12–1103 is recovered as an element of the costs and as such the trial court may take judicial notice of the services performed by counsel for the plaintiffs in assessing the award. Hammontree v. Kenworthy, 1 Ariz.App. 472, 404 P.2d 816

(1965). See McNeil v. Attaway, 87 Ariz. 103, 348 P.2d 301 (1959). We have reviewed the record and it is our opinion that the attorney's fee award by the trial court is reasonable and does not constitute an abuse of the court's discretion.

It is not necessary to discuss defendants' reformation argument because we have held that the evidence was sufficient to support both judgments.

Both judgments are affirmed.

HAIRE and JACOBSON, JJ., concur.