499 P.2d 986

Earnest C. CHEATHAM and Adele Cheatham, his wife, G. W. Cheatham and Edna Cheatham, his wife, Armon D. Cheatham and Ruth Cheatham, his wife, and L. F. Cheatham and Rita E. Cheatham, his wife, Appellants and Cross-Appellees,

v.

John A. VANDERWEY aka Johannes Auke Van Der Weij and Angelina R. Vanderwey, his wife, Appellees and Cross-Appellants.

No. 1 CA–CIV 1643.

Court of Appeals of Arizona,
Division 1,
Department B.

Aug. 1, 1972.

Carson, Messinger, Elliott, Laughlin & Ragan by G. Wayne McKellips, Jr., Phoenix, for appellants and cross-appellees.

Killian & Legg by John G. Hough, Vernon L. Nicholas, Mesa, for appellees and cross-appellants.

EUBANK, Judge.

This appeal and cross-appeal arise from a judgment awarding title to a disputed parcel of land to the defendant-appellees by virtue of their adverse possession and the adverse possession of their predecessors of the parcel over the 10-year statutory period of time. The plaintiff-appellants, who commenced the action by filing a quiet title action in the Maricopa County Superior Court in December 1969, have appealed, claiming that there is no evidence to support the verdict of the advisory jury or the final judgment of the court.

The parties filed a pretrial statement that contains a stipulation of the essential facts, *inter alia*, as follows:

"(a) The property which is the subject of this suit is described as:

That part of the North half of Section 4 Township One (1) South, Range Two (2) East of the Gila and Salt River Base and Meridian, lying East of the West line thereof, and Westerly of the West line of the existing county road across the Northwest corner thereof, the general alignment of which is as shown in Book 4 of Road Maps, page 30, records of Maricopa County, Arizona.

(b) The Plaintiffs were originally the owners in fee of all of the North half of Section 4 including the parcel in litigation, and unless the Defendants and their predecessors in interest have acquired title to the property by adverse possession, Plaintiffs are still the owners and are entitled to have title quieted in them.

(c) The Plaintiffs originally acquired title to the North half of Section 4 by virtue of a deed recorded May 1, 1946 and recorded in Docket 507 at p. 431

thereafter they conveyed to a corporation owned by them, Cheatham Dairy, Incorporated, by a deed recorded January 30, 1950 in Docket Number 496 at page 383 thereafter the property was reconveyed to Plaintiffs by a deed dated June 5, 1951, and recorded June 6, 1951 in Docket 757 at page 196, records of Maricopa County, Arizona.

(d) The Defendants' predecessors in interest, William O. and Anna Simser, acquired title to a portion of Section 5 which adjoins the parcel in dispute by a deed dated June 8, 1954, recorded July 1, 1954 in Docket 1383, page 161, records of Maricopa County, Arizona. Defendants succeeded to title to that portion of Section 5 owned by the Simsers by virtue of a deed dated May 26, 1967 recorded June 15, 1967, in Docket 6612, page 743. Contemporaneously therewith, William O. and Anna L. Simser delivered to Defendants a Quit-Claim deed dated May 26, 1967 and recorded June 15, 1967, in Docket 6612, page 744, which purported to convey the Simsers' interest in a parcel of property in the Northwest corner of Section 4."

It should be stated that the east boundary of Section 5 joins the west boundary of Section 4 and that the disputed parcel is approximately the shape of a right angle triangle in the northwest corner of Section 4 consisting of about a quarter of an acre in area. The only interrogatory submitted to the advisory jury and answered by the jury was as follows:

"Did the defendants or their predecessors have peaceable and adverse possession of the property in dispute, using and enjoying such property for a continuous period of ten years, thus barring plaintiffs' rights?

ANSWER:
Yes    X
No

—Charles L. Asher, Foreman"

The trial court was not requested to make findings of fact and conclusions

of law, consequently, the written judgment merely acknowledges the jury's answer, and, in effect, adopts it as its own, awarding title to the disputed parcel to the defendant-appellees on the basis of their adverse possession defense. Since the trial court made no findings of fact and none were requested, all inferences that can be drawn from the evidence in favor of sustaining the judgment and the defendant-appellees' adverse title must be made by this Court. Kay v. Biggs, 13 Ariz.App. 172, 475 P.2d 1 (1970).

Appellant-plaintiffs raise three questions on appeal. The first two deal with sufficiency of the evidence to establish the continuous cultivation of the disputed parcel, admittedly farm land, as required by A.R.S. § 12–526. The third question, which we consider the main question, reads:

"3. Are the defendants entitled to claim possession of the disputed property for the periods of time that lessees of their predecessors' deeded land may also have used the disputed parcel, when the disputed parcel was not included in the lease?"

■ "Tacking" is a doctrine which permits one claiming title by adverse possession to add his period of possession to that of a prior adverse possessor or possessors in order to establish a continuous possession for the statutory period. 3 Am.Jur. 2d Adverse Possession, § 59; 6 R. Powell's The Law of Real Property, Par. 1021 (ed. 1968). In Arizona tacking was recognized by the Legislature by enacting A.R.S. § 12–521, subsec. B which states:

"B. 'Peaceable and adverse possession' need not be continued in the same person, but when held by different persons successively there must be a privity of estate between them."

It is clear from a reading of the foregoing stipulation subparagraph (d), from our review of the record, and from the written briefs filed herein, that the proof of "tacking" of successive adverse possessions by third parties is absolutely necessary in order to support the ten successive years of adverse possession in the defendant-appellees and to sustain the judgment.

■ Plaintiff-appellants contend that since the record shows that the disputed parcel was not described in the three separate leases made by defendant-appellees' predecessor, as lessor of Section 5 land ·to three different lessees, that the proof of a continuous adverse possession fails. This contention was partially answered by our Supreme Court in Santos v. Simon, 60 Ariz. 426, 138 P.2d 896 (1943) when the court said:

" . . . Under this claim defendants say the law requires that where, as here, it appears that there were several successive adverse occupants of the premises, their possession can be tacked together only when evidenced by deeds duly executed. The rule, however, seems to be that 'any conveyance, agreement, or understanding which will refer the several adverse possessions to the original entry and which is accompanied by a transfer of possession will create such a privity as to permit a tacking. The ordinary solemnities for the transfer of land are not required; no written instrument is necessary, a parol transfer will suffice. . . .' 2 C.J.S. Adverse Possession § 131, p. 694.

The rule announced in George v. Gist, 33 Ariz. 93, 263 P. 10, relied on by defendants, to the effect that lands, or interests therein, can be conveyed only by deed, has no application." (60 Ariz. at 428, 138 P.2d at 897.)

In our opinion Santos is equally applicable to adverse possession claimed through a tenant or several tenants. Obviously under a lease, the landlord-adverse possessor is out of possession of the land, and if title by adverse possession is to mature in him for the continuous 10-year period of the statute, privity of adverse possession must be proven, and in this case proven by the defendant-appellees. Tenney v. Luplow, 103 Ariz. 363, 442 P.2d 107 (1968); Bale v. Coffin, 13 Ariz.App. 550, 479 P.2d 427

(1971); 3 Am.Jur.2d, Adverse Possession, § 170; 2 C.J.S. Adverse Possession § 191.

The question of whether or not there is sufficient evidence to establish defendant-appellees' privity of adverse possession is within the range of the third question and was discussed by the parties in their respective briefs. We have reviewed the record and find that there is no evidence in the record to support an inference that the three tenants' possession of the disputed parcel was in privity with the defendant-appellees' original adverse possession.

The record shows that the Russell Lease for 1958 and 1959 was in writing but a copy was unavailable for the trial. The only testimony of privity of adverse possession by Russell was given by the defendant-appellees as follows:

"Q And what happened in 1958?

A I leased it in 1958.

Q Who did you lease it to, do you recall?

A Sam Russel (sic).

Q As the landlord in that lease, did you include as part of the lease the property that's in question:

A I do not have the least (sic) [lease]. I'm certain that in the normal lease I would not specifically lease that particular little triangle of land, but I would—I would consider the lessee his right to use it. My lease would call for the land that was actually registered in my name.

Q Did you give Mr. Russell permission to use that corner parcel that is in question in this case?

A Well it was never discussed but he used it. I gave him permission—as far as I was concerned, he could use it.

Q You never objected to him using it?

A No.

Q And did you know that he was making use of that property after he last had it from you?

A Yes."

Although this evidence does support possession in Russell it does not support a privity of adverse possession hostile to the fee title of the plaintiff-appellants.

The cropduster lease of 1960 is subject to the same type of testimony. The defendant-appellees' evidence was as follows:

"Q Let me rephrase it for you then.

When you leased this property in 1960 to the crop dusting outfit, you included it in all the property that you owned?

A Well the lease was spelled out, the legal description of Section Five, he had—he could use the other if he wanted to.

Q All right. Then after 1960 where it says idle here, does that mean that following this permissive use by your tenant that you did not plant in crops on the property in question?

A I did not plant crops after that date.

Q But it doesn't mean to you, does it, Mr. Simser, that you abandoned this corner parcel?

A No."

Here again we have an inference of possession in the tenant but certainly no evidence of holding in privity and in *adverse* possession against the title interests of the plaintiff-appellants.

Finally the defendant-appellees leased all of their Section 5 land to the plaintiff-appellants' wholly owned corporation, Cheatham Dairy, Incorporated, from January 14, 1965 to January 13, 1968. The records shows that Cheatham Dairy, Incorporated, was a closely held corporation wholly owned by the four Cheatham brothers and that it was their farming corporation, except for cotton which they farmed as a partnership. The record also shows that the title to the Section 4 land was vested in the plaintiff-appellants and not in the corporation. Defendant-appellees contend that the possession of the disputed parcel by the corporation is separate and distinct from the plaintiff-appellants and that the possession of the corporation can be tacked in their favor. Assuming the truth of the

defendant-appellees' argument, the evidence does not establish that the corporation's possession was holding in privity and in adverse possession against the title interests of its owner. At one point the testimony regarding the Cheatham Lease was:

"Q Was it then your intention, Mr. Simser, to when you signed, executed and delivered that lease which is Exhibit 12 to commit Cheatham Dairy, Incorporated, to make use of the corner in question just as you had permitted the prior tenants to do so?

A Yes, sir."

Later on the testimony was:

Q How did you happen to negotiate your lease with Cheatham Dairy?

A I believe Earnest Cheatham approached me about it.

Q Okay. At the time you leased that or at the time of your discussions about the lease was anything said about the corner of Section Four?

A No.

Q Did you ever make any attempt to prevent Cheatham Dairy from farming on the corner of Section Four?

A No.

Q Did they ask your permission to farm on the corner of Section Four?

A No."

Again, no inference can be drawn from this testimony to support a conclusion that a privity of adverse possession existed between the parties.

In Kay v. Biggs, supra, we summarized the law of adverse possession as follows:

" 'Adverse Possession' is defined by A.R.S. § 12–521, subsec. A(1) as meaning ' * * * an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another.', while 'peaceable possession' is defined at A.R.S. § 12–521, subsec. A(2), as, ' * * * possession which is continuous, and not interrupted by an adverse action to recover the estate.' These two definitions are applicable to the 10-year statute of limitation, A.R.S. § 12–526, subsec. A which reads as follows:

'A person who has a cause of action for recovery of any lands, tenements or hereditaments from a person having *peaceable* and *adverse possession* thereof, cultivating, using and enjoying such property, shall commence an action therefor within ten years after the cause of action accrues, and not afterward.' (emphasis added)" (13 Ariz.App. at 174–175, 475 P.2d at 3–4.)

In addition, as we have seen, A.R.S. § 12–521, subsec. B., supra, provides that "peaceable and adverse possession" of different persons may be tacked in order to satisfy the 10-year statute of limitations, but there must be privity of estate between them. Where the property is not described in the lease, this privity of estate would constitute, at the very least, an agreement or understanding on the part of the tenant to continue adverse possession of the unleased parcel on behalf of the landlord. Santos v. Simon, supra; 2 C.J.S. Adverse Possession § 129; 3 Am.Jur.2d, Adverse Possession, §§ 60, 63, 64. *See also* Miller v. Fitzpatrick, 418 S.W.2d 884 (Tex.Civ.App. 1967).

In our opinion the record is devoid of evidence supporting any privity of adverse possession between the defendant-appellees, as landlord, and their three lessees. Since the defendant-appellees' adverse possession began in 1954 it is clear from the record that no ten successive years of adverse possession could be established without including the lease periods, and therefore none was established.

The judgment of the trial court is therefore reversed and title to the disputed parcel of land is hereby quieted in the plaintiff-appellants. The plaintiff-appellants are also entitled to an attorney's fee as authorized by A.R.S. § 12–1103 and this matter is remanded to the trial court for the determination of that fee.

For the reason that this matter is reversed, there is no reason to consider the cross-

appeal since it relates only to the denial of defendant-appellees' motion to file a supplemental pleading alleging a quiet title action for the purpose of obtaining their attorney's fee.

Judgment reversed.

HAIRE, C. J., and JACOBSON, J., concur.