NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JAMES N. FLAUM, TRUSTEE OF THE JAMES N. FLAUM REVOCABLE
TRUST, *Plaintiffs/Appellants/Cross-Appellees*,

*v.*

KURT R. HOERNIG and BELINDA G. HOERNIG, husband and wife,
*Defendants/Appellees/Cross-Appellants.*

No. 1 CA-CV 23-0573

FILED 07-30-2024

Appeal from the Superior Court in Yavapai County
No. P1300CV202000154
The Honorable John David Napper, Judge

**AFFIRMED IN PART; VACATED IN PART; REMANDED**

COUNSEL

Robert A. Miller PC, Prescott
By Robert A. Miller
*Counsel for Plaintiffs/Appellants/Cross-Appellees*

Law Office of Michael Warzynski PLLC, Phoenix
By Michael Warzynski
*Counsel for Defendants/Appellees/Cross-Appellants*

---

**MEMORANDUM DECISION**

Judge Michael S. Catlett delivered the decision of the Court, in which Presiding Judge Angela K. Paton and Judge James B. Morse Jr. joined.

---

**C A T L E T T**, Judge:

¶1        The superior court granted James N. Flaum, as trustee of the James N. Flaum Revocable Trust ("the Trust"), a prescriptive easement for pedestrian, recreational use over a short path on adjacent property owned by Kurt and Belinda Hoernig ("the Hoernigs"). The Trust challenges that judgment in two ways. It first contends the prescriptive easement should have included vehicular use. It also contends the court failed to declare its rights under two preexisting express easements that, when combined, grant vehicular access across the entire Hoernig property to a nearby public road. The Hoernigs cross-appeal, challenging the attorney fees award to the Trust, while the Trust contends the court applied an incorrect interest rate to that award. We affirm the grant of a prescriptive easement limited to pedestrian, recreational use but vacate the attorney fees award and remand for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

¶2        The Trust and the Hoernigs own adjacent parcels in Yavapai County. The Trust owns parcels 104-06-020Q and 104-06-020R ("020Q" and "020R," respectively). The Hoernigs own parcel 104-06-020V ("020V"), which the parties agree was formed in 2000 when the Yavapai County Assessor combined former parcels 104-06-020T ("020T") and 038. The image[1] below shows the parcels' locations relative to one another and to Big Bug Mesa Road, the road both sides use to access their properties:

---

[1]        Though the image depicts 020V and 038 as separate parcels, the parties agree that current parcel 020V includes 038.

2



¶3          Two relevant easements exist over the Hoernigs' property. In 1993, the then-owners of parcel 020T granted an easement "20 feet in width, over, under and across present roadways as they now exist" to benefit parcel 020Q (the "Cochran/Fuzzell Easement"). Seven years later, the Hoernigs granted an easement over parcel 038 to the prior owners of parcel 020Q (the "Gustafson Easement"), in which they agreed that "the existing Road from Big Bug Mesa Road . . . is for the use and enjoyment of any owners of 20Q Parcel[.]" The image below shows the roadways and paths that existed on parcel 020T in 1996, with the existing roadway on parcel 038 represented to the right:



The parties agree the Cochran/Fuzzell Easement applies to the roadway crossing parcel 020T and the top branch depicted above. The Flaums and their guests use that roadway to access the Trust's cabin on parcel 020Q.

**¶4** The bottom branch, which the parties call the Spur, reaches a different point on parcel 020Q near a capped wellhead. Ms. Flaum testified that the Spur was not accessible by passenger vehicle beyond the wellhead. The parties originally disputed whether the Spur existed in 1993 and, therefore, whether it was included in the Cochran/Fuzzell Easement.

**¶5** The Trust sued the Hoernigs in 2020 seeking a declaration of ingress and egress rights over the roadway, the top branch, and the Spur via the Gustafson Easement and the Cochran/Fuzzell Easement. The Trust also alleged it had established a prescriptive easement "for ingress and egress over, across and on the [Gustafson] Easement, the Cochran/Fuzzell Easement, and the [Spur]" to access parcels 020Q and 020R.

**¶6** The superior court held a bench trial, at which the parties agreed the only issue was use of the Spur. At the close of the Trust's case, the superior court granted judgment as a matter of law in part, finding the Spur was not included in the Cochran/Fuzzell Easement. Following trial,

4

the court entered findings of fact and conclusions of law and determined the Trust had established a prescriptive easement over the Spur for pedestrian, recreational purposes.

¶7        The Trust moved for reconsideration, contending it had shown that the Flaums' use of the Spur "included vehicular traffic in addition to pedestrian traffic." The court denied that motion, concluding that "the evidence produced about vehicle usage was that it is sporadic and rare, thereby failing to establish a prescriptive easement for vehicle usage." It then entered final judgment granting the Trust "a pedestrian only ingress and egress easement" over the Spur. The court also awarded the Trust $73,000 in attorney fees and $2,525.16 in taxable costs with 4.25% annual interest.

¶8        The Trust appealed, and the Hoernigs cross-appealed challenging the fee award. We have jurisdiction over the appeal and cross-appeal. *See* A.R.S. § 12-2101(A)(1).

**DISCUSSION**

¶9        The Trust contends the superior court erred in refusing to include vehicular access in the prescriptive easement over the Spur. We defer to the court's factual findings unless they are clearly erroneous, but we review its legal conclusions *de novo*. *Town of Marana v. Pima County*, 230 Ariz. 142, 152 ¶ 46 (App. 2012). A factual finding is not clearly erroneous if it is supported by substantial evidence even if there is substantial conflicting evidence. *Castro v. Ballesteros-Suarez*, 222 Ariz. 48, 51–52 ¶ 11 (App. 2009). We may draw our own legal conclusions from facts found or inferred in the judgment. *FL Receivables Trust 2002-A v. Ariz. Mills, L.L.C.*, 230 Ariz. 160, 166 ¶ 24 (App. 2012); *Matter of Est. of Musgrove*, 144 Ariz. 168, 170 (App. 1985).

I.    **Prescriptive Easement**

¶10       A prescriptive easement grants a nonexclusive right of continued use. *Paxson v. Glovitz*, 203 Ariz. 63, 68 ¶ 31 (App. 2002). A party claiming a prescriptive easement must show (1) the land in question has actually and visibly been used for a specific purpose for ten years; (2) the use began and continued under a claim of right; and (3) the use was hostile to the true owner's title. *Ammer v. Ariz. Water Co.*, 169 Ariz. 205, 208 (App. 1991); *see also Beck v. Neville*, 256 Ariz. 361, ___ ¶ 45 (2024) (for purposes of a prescriptive easement, "it is only the *use* of the land which must be shown to be open, notorious, and adverse.") (quoting *Etz v. Mamerow*, 72 Ariz. 228, 231 (1951)).

¶11        The scope of a prescriptive easement is determined by the use through which it is acquired. *Stamatis v. Johnson*, 71 Ariz. 134, 138 (1950). Use need not be continuous or frequent; the claimant need only show that he or she uses the land "as would an ordinary owner of the same type of land." *Kay v. Biggs*, 13 Ariz. App. 172, 175 (1970). "Seasonal uses, intermittent uses, and changing uses all may meet the continuity requirement so long as they are open or notorious." Restatement (Third) of Property (Servitudes) § 2.17, cmt. i (2000).[2]

¶12        The Trust contends it established that vehicular uses of the Spur "were as regular and continuous as any owner . . . would have made of it for nearly two decades," thereby entitling the Trust to an easement permitting general vehicular ingress and egress over the Spur. The record, on balance, does not support this contention. Only two witnesses testified that they used the Spur for vehicular use. Richard Grover, who did tree and landscaping work for the Flaums starting in 2006, testified that he would back his truck onto the Spur to perform work on parcel 020R. How often he did this is unclear:  he testified he did "ongoing property maintenance" as needed, which included "the weeds need[ing] to be cleaned up at least every other year if not every year."

¶13        Thomas Keller, who had maintained the Trust's septic system since 2002, testified that he used either the Spur or the roadway to the Trust's cabin to service the septic system, "whichever suited [his] purposes at that time."  He could only estimate that he used the Spur for approximately half of his service visits, which occurred two or three times each year. He also conceded he never drove to the end of the Spur. The Trust contends "the septic system on . . . 020Q can only be accessed by vehicles via the Spur and has been accessed as such since 2002," but Keller's testimony suggests otherwise.

¶14        All other witnesses testified they primarily used the Spur either on foot or for parking vehicles. For example, Joanne Flaum testified the Flaums would occasionally park cars on the Spur when they had visitors. She also testified they used the Spur for "walking [and] hiking" and would "drive [their] ATVs down" the Spur from time to time. She also testified that the Trust filled ruts on the Spur in 2017 and 2018, but those

_____

[2]        We have applied the Restatement (Third) of Property: Servitudes in resolving prescriptive easement claims. *See Paxson*, 203 Ariz. at 67 ¶ 21.

repairs were necessitated by "storms . . . and the snow," not frequent vehicular use.

**¶15** Jim Flaum testified that he would walk the Spur to play with the Flaums' dog, look for dead trees, take his grandson to the creek on the Trust's property, or check the capped wellhead. Katherine Wait, who resided at the Trust's cabin from 2014 to 2017, similarly testified that she used the Spur to walk the Flaums' dogs or visit the creek with her grandchildren. She also testified, consistent with Joanne's testimony, that the Spur was occasionally used for "overflow parking." The Flaums' daughter, Kendra Pieratt, testified that she and her family used the Spur primarily for hiking, sledding, and parking. She also testified that her family "rode around" on quads in the area, including visits to the creek. But when asked whether they did "anything significant" near the split, she said no and testified that they always walked one way or the other.

**¶16** In sum, the superior court heard consistent testimony describing frequent pedestrian use of the Spur by the Flaums and their family but only heard testimony regarding occasional vehicular use by two contractors. This occasional vehicular use to service the Trust's property was insufficient to establish a prescriptive easement for general vehicular ingress and egress. The court did not abuse its discretion by limiting the prescriptive easement to pedestrian, recreational use. *See Inch v. McPherson*, 176 Ariz. 132, 136 (App. 1992) ("Those using the land of another for the prescriptive period may acquire the right to continue such use, but do not acquire the right to make other uses of it.").

## II. Access to Parcel 020R

**¶17** The Trust also contends the superior court's judgment "did not include access over . . . [parcel] 038 for the benefit of . . . [parcel] 020R," which it says leaves it without legal access to parcel 020R. The Trust's counsel represented at the start of trial, however, that the parties' only remaining dispute was about access to the Spur:

> If you read the pleadings, then you'll know this case is about access of two properties that are adjoining each other, and [the Trust's] property is only accessible over the Hoernigs' property . . . . There are some easements established over the years that provide access to those properties, and my understanding is that this Court's only dispute—I think I'm correct about this—is over what we have been calling the spur.

In response, the Hoernigs' counsel conceded that the Trust "ha[s] a right to travel across [parcel 020V on] what's called the Gustafson easement and across the Cochran/Fuzzell easement to their property[.]"

¶18 Although the Trust argued in its written closing statement that "there is . . . a dispute as to whether [it] has the right to use the road on . . . [parcel] 038" to access parcel 020R, it cited no trial evidence to show the Hoernigs ever challenged its rights under the Gustafson Easement. The Trust also presented no evidence suggesting the Gustafson Easement, which states that "the existing Road from Big Bug Mesa Road . . . is for the use and enjoyment of any owners of 20Q Parcel," is insufficient given (1) the Trust owns parcel 020Q and 020R and (2) parcels 038 and 020R do not touch. The court did not err by only resolving access to the Spur in its final judgment.

## III.    Attorney Fees

¶19 The Hoernigs raise two challenges to the Trust's attorney fees award. First, the Hoernigs contend the Trust cannot recover attorney fees under A.R.S. § 12-1103(B). Second, the Hoernigs argue that if the court was permitted to award fees under A.R.S. § 12-1103(B), the court should have considered various factors in granting the award, including the Trust's success, and reduced the amount awarded accordingly. We conclude the superior court was permitted to award fees under § 12-1103(B), but it is unclear from the record whether the court was aware it could reduce the requested fee amount using the relevant factors.

### A.    Application of A.R.S. § 12-1103(B)

¶20 To recover fees under § 12-1103(B), a quiet title claimant must "request[] the person . . . holding an apparent adverse interest or right therein . . . execute a quit claim deed thereto, and . . . tender[] to him five dollars for execution and delivery of the deed" at least twenty days before filing suit. The Hoernigs do not dispute the Trust sent them quitclaim deeds in compliance with § 12-1103(B). Still, they contend the Trust cannot recover attorney fees because "[t]his matter never involved an action that could be resolved by use of a quit claim deed permissible under A.R.S. § 33-402[.]"

¶21 We first note the Hoernigs stipulated before trial that § 12-1103(B) "allow[s] for an award of attorney's fees if the terms therein were satisfied." In any event, § 33-402 does not control; it merely provides form language for a quitclaim deed in which the grantor would relinquish "all . . . interest" in the property at issue. A.R.S. § 33-402(1). Section 12-1103(B)

does not require a defendant to disclaim all interest in a property to avoid a potential fee award. It instead provides:

> If a party, twenty days prior to bringing the action to quiet title to real property, requests the person, other than the state, holding an ***apparent adverse interest or right*** therein to execute a quit claim deed thereto, and also tenders to him five dollars for execution and delivery of the deed, and if such person refuses or neglects to comply, the filing of a disclaimer of interest or right shall not avoid the costs and the court may allow plaintiff, in addition to the ordinary costs, an attorney's fee to be fixed by the court.

(Emphasis added). Thus, to avoid a fee award, a defendant need only disclaim whatever interests or rights it holds that are adverse to the plaintiff's claim.

**¶22** Moreover, we have previously awarded attorney fees under § 12-1103(B) to parties who successfully quieted title to a prescriptive easement. *See Lee v. Apel*, 2014 WL 5819818, at *1, *5 ¶¶ 5, 21 (Ariz. App. Nov. 10, 2014) (mem. decision) (awarding § 12-1103(B) fees on a claim quieting title to a prescriptive easement); *Potters Clay Realty, L.L.C. v. Kummer*, 2014 WL 1832876, at *4–*5 ¶¶ 15–22 (Ariz. App. May 6, 2014) (mem. decision) (stating that § 12-1103(B) applies to a quiet title action addressing a prescriptive easement but denying fees based on noncompliance with the statutory prerequisites). The Trust therefore was eligible to recover some amount of attorney fees under § 12-1103(B).

### B.     Amount of Award

**¶23** The Hoernigs next argue that even if the Trust was eligible to recover attorney fees under § 12-1103(B), the question of the proper amount of fees should be remanded "for consideration of an appropriate amount reflecting what the [Trust] actually obtained." We agree.

**¶24** We review an award of attorney fees for an abuse of discretion. *Cook v. Grebe*, 245 Ariz. 367, 370 ¶ 11 (App. 2018). "The court abuses its discretion if the reason for the award is 'legally incorrect.'" *In re Est. of Ganoni*, 238 Ariz. 144, 147 ¶ 18 (App. 2015). An attorney fees award is not mandated but "[i]t is within the trial court's discretion to determine whether to award attorney's fees to a party who has prevailed in a quiet title action and otherwise complied with the provisions of section 12–1103(B)." *Scottsdale Mem'l Health Sys., Inc. v. Clark*, 164 Ariz. 211, 215 (App. 1990); *see also Fields v. Oates*, 230 Ariz. 411, 415 ¶ 13 (App. 2012)

("[R]esolution of an application for attorneys' fees is a discretionary determination, not a merely ministerial act."). Factors for the superior court to consider in setting an award under § 12-1103(B) include:

> (1) the merits of the claim or defense presented by the unsuccessful party;
>
> (2) whether the litigation could have been avoided or settled and the successful party's efforts were completely superfluous in achieving the results;
>
> (3) whether assessing fees against the unsuccessful party would cause an extreme hardship;
>
> (4) whether the successful party did not prevail with respect to all the relief sought;
>
> (5) the novelty of the legal question presented;
>
> (6) whether such claim or defense had previously been adjudicated in this jurisdiction; and
>
> (7) whether the award would discourage other parties with tenable claims or defenses from litigating or defending legitimate . . . issues for fear of incurring liability for substantial amounts of attorney's fees.

*Scottsdale Mem'l Health Sys., Inc.*, 164 Ariz. at 215–16 (citing *Associated Indem. Corp. v. Warner*, 143 Ariz. 585, 589 (1985)) ("[T]he trial court may consider the same factors that are considered in determining whether to award attorney's fees pursuant to A.R.S. section 12-341.01.").

¶25        In its application for attorney fees, the Trust requested $73,260. The superior court awarded $73,000—virtually all the requested amount—but provided no explanation for doing so. The Hoernigs contend the Trust obtained far less at trial than it demanded in the quitclaim deeds it tendered, which they argue should have been considered in setting the amount of attorney fees. This is true. The Trust's proffered quitclaim deeds, if executed, would have granted it a perpetual, non-exclusive 14-foot ingress, egress, and public utility easement over the Spur. Instead, the Trust obtained only a prescriptive easement for pedestrian, recreational use.

¶26        The Hoernigs correctly cite *Jones v. Burk*, 164 Ariz. 595 (App. 1990), for the proposition that the superior court can reduce a § 12-1103(B)

fee award if the plaintiff only partially succeeds. Indeed, it is commonplace for courts to reduce a fee award if a party obtains only partial success. *See, e.g., Jones*, 164 Ariz. at 597 (affirming a significantly reduced fee amount after partial success); *Cook*, 245 Ariz. at 371 ¶ 10–15 (affirming an approximately 40% fee reduction after a partial success); *see also Schweiger v. China Doll Restaurant, Inc.*, 138 Ariz. 183, 189 (App. 1983) (recognizing that in certain circumstances "[w]here a party has achieved only partial or limited success . . . it would be unreasonable to award compensation for all hours expended, including time spent on the unsuccessful issues or claims.").

**¶27**          Here, the superior court did not indicate why it concluded the Trust was entitled to the full amount of its requested fees or whether the court was exercising its discretion in making such an award. Thus, it is unclear whether the court believed it was required to grant the Trust all its requested fees, which would be legally incorrect, or if it concluded the Trust was entitled to its full fee request for another reason. *See Freeport Minerals Corp. v. Corbell*, 2017 WL 3623257, at *5 (Ariz. App. Aug. 23, 2017) (mem. decision) (affirming a fee award where "the trial court did not 'presume[] an entitlement of attorney fees' but rather noted in its ruling that it 'ha[d] the discretion to award attorneys' fees as well as the discretion to fix the amount.'"); *see also Associated Indem. Corp.*, 143 Ariz. at 589 (remanding the denial of a fee award for the court to consider the relevant factors when the superior court failed to give a reason for its denial). Consequently, we vacate the fee award and remand for the superior court to reconsider the amount of fees awarded, if any, considering the above factors, including the Trust's limited success and any efforts the Hoernigs made to settle this litigation.

## IV.    Interest Rate

**¶28**          The Trust also argues that the superior court erred by awarding only 4.25% annual interest. Unless specifically provided for by law or by contract, interest on any judgment other than a judgment on medical debt is the lesser of (1) ten percent annually or (2) one percent plus the prime rate as published by the board of governors of the federal reserve system. A.R.S. § 44-1201(B). The superior court entered its final judgment on July 14, 2023. The federal prime rate on that date was 8.25%.

**¶29**          The Hoernigs do not address this issue in their answering brief. We may consider this a confession of error. *In re 1996 Nissan Sentra*, 201 Ariz. 114, 117 ¶ 7 (App. 2001). If, on remand, the superior court again concludes the Trust is entitled to attorney fees, the court should also enter

a corrected annual interest rate of the lesser of either (1) ten percent annually or (2) one percent plus the prime rate as published by the board of governors of the federal reserve system. A.R.S. § 44-1201(B).

## V.     Attorney Fees on Appeal

**¶30**      The Trust requests an additional award of attorney fees on appeal under § 12-1103(B). The Trust failed to expand its prescriptive easement rights beyond those the superior court granted. Therefore, in our discretion, we decline to award attorney fees on appeal. *See Cook*, 245 Ariz. at 369 ¶ 8. The Hoernigs are, on balance, the successful parties in this appeal and may recover their taxable costs upon compliance with Arizona Rule of Civil Appellate Procedure 21.

## CONCLUSION

**¶31**      We vacate the attorney fees award and interest provision of the judgment and remand for further proceedings consistent with this decision. We affirm the judgment in all other respects.



AMY M. WOOD • Clerk of the Court
FILED:    AGFV