admission of light, and as much for the protection of the window and the cellar against entrance from without as the sash and glass of the window could have been.

We think, therefore, the taking up of the grating constituted an exterior breaking as clearly as the opening of the window itself, or of the outer door.

We think, also, that under the facts stated in the record (to which we refer without repeating them here), though the ownership of the store was in Kern and under the same roof with his dwelling, yet being leased by Kern to Murray and separately occupied by the latter, with an outside entrance distinct from that of the dwelling, and in no way used with it, the store must be considered as severed by the lease and several occupancy, and that it was not within the meaning of this section, "adjoining to or occupied with a dwelling-house." It did not adjoin Murray's dwelling-house nor any dwelling-house occupied by him. It was in no sense appurtenant to, connected with, or within the curtilage of his dwelling, which seems to be the meaning of the statute. The exceptions were not well taken; there was no error in the ruling of the court, and the Recorder should, we think, proceed to render the proper judgment upon the verdict. Let it be so certified to the Recorder's Court.

The other Justices concurred.

---

## George H. Russell v. James A. Sweezey.

*Adverse possession: Notice: Bona fide purchaser: Negotiation by agent.* Actual possession of lands is notice of the title of the party in possession, whatever it may be, and not merely of that which the registry may happen to disclose.

Where the purchase of a tract of land was negotiated by an agent, and the fact that the land was, at the time, adversely held by a party in possession

was treated as a circumstance which diminished the value of the vendor's interest, the knowledge of the agent of the adverse possession will be the knowledge of the purchaser; and he, not inquiring of the party in possession as to the title, will not be regarded as a *bona fide* purchaser without notice.

*Deed : Evidence: Record: Description.* It is no objection to the admission of a deed in evidence on the trial of an ejectment suit, that it was not recorded until after the commencement of the suit.

A deed of a parcel of land described by the subdivision and number of the section, and the number of the township and range, although not specifying the county or state, is not void for uncertainty.

*Heard January 6, 7. Decided January 10.*

Error to Barry Circuit.

This was an action of ejectment brought by George H. Russell in the Circuit Court for the County of Barry, against James A. Sweezey. Both parties claim under Hosea B. Huston, who purchased the land of the United States government in 1839. Under the charge of the court the jury found a verdict for the defendant; and the judgment entered thereon comes into this court by writ of error.

*J. L. Hawes,* for plaintiff.

*D. Darwin Hughes,* for defendant.

GRAVES, J.

The plaintiff in error brought ejectment against Sweezey for the north half of the north-east quarter of section nineteen, in township three north, of range eight west, in the county of Barry. The case was tried by a jury, who returned a verdict for the defendant, upon which judgment was entered.

It appeared on the trial that one Hosea B. Huston obtained a patent from the United States, dated May 1, 1839, for the whole north-east quarter of said section nineteen. The plaintiff proved that the patentee died at Kalamazoo in August, 1849, leaving Mary A. Huston, his widow, and Ellen A. Huston, Marcella M. Huston and

Charles A. Huston, his children and sole heirs-at-law. He also gave in evidence the record of a deed for the land described in the patent bearing date the 21st of January, 1867, and executed by the widow and heirs before named of Huston to plaintiff. The defendant offered in evidence the record of a deed bearing date September 3, 1847, from the patentee, Hosea B. Huston, and Mary A. Huston, his wife, to Nathaniel M. Brown, purporting to convey to the latter in fee "all that certain tract or parcel of land known and described as follows, to-wit: The north-east quarter of section numbered nineteen (19), in town three (3) north, of range numbered eight west, containing one hundred and sixty acres, according to the United States survey, be the same more or less." This deed described the grantor and wife as residing in the county of Kalamazoo, and appears to have been acknowledged before a justice of the peace of that county on the day it bears date, and to have been executed in the presence of the acknowledging officer, who signed it as a subscribing witness. It was placed on record July 10, 1869. The admission of this record as evidence in the cause was objected to by the plaintiff on two grounds: First, that the deed was not recorded until after the commencement of this suit, and second, that being unrecorded at the time of the purchase by the plaintiff, it was void as against the prior recorded title of the latter. The evidence was admitted, and the plaintiff excepted.

The defendant then offered in evidence the record of a deed from Nathaniel M. Brown to Isaac Fryer, describing the land embraced by the patent. This was also admitted, but under an objection by the plaintiff that it did not appear that Brown, the grantor, had any title. The record of a deed from Isaac Fryer to defendant purporting to convey the land in question, was next admitted in evidence,

under the objection that it did not appear that Fryer's grantor had any title.

It appeared on the cross-examination of defendant that the land covered by the patent was sold several times for taxes, and deeded sometimes to him and sometimes to one Frank Allen, and that in 1866 the latter deeded to Sweezey the lot in controversy, and Sweezey deeded to Allen the other half of the quarter. The defendant does not rely upon any tax title, although the record does not, as we observe, disclose any infirmity in it.

It appears incontestably from the record, that the plaintiff's counsel here, Mr. Hawes, was the plaintiff's agent in bargaining with the widow and heirs of Huston for their deed and transfer of the 21st of January, 1867, and that whatever the plaintiff may have done in the matter, or whatever he may have paid as consideration, was transacted and paid through Mr. Hawes. The close and peculiar relation which seem to have subsisted between these persons in relation to this business must preclude all doubt respecting their attitude to each other and to the transaction; and we think the case is an extremely safe one for applying as far as needful the general rule that whatever is known to the agent in the business of his agency is, in legal contemplation, known to the principal.

It clearly appears from the evidence, which on this subject is unopposed and uncontroverted, that for a period beginning several years before and continuing to a time subsequent to the deed to Russell, the defendant was in the actual possession of the premises in dispute, first, under an agreement to purchase, and then under a conveyance from Fryer, with knowledge of the deeds from Huston to Brown, and from Brown to Fryer; and also, that he was engaged in improving the premises from a year or more before Rus-

sell's deed, to a considerable time subsequent thereto. It also appears conclusively from the evidence on both sides that Hawes, while negotiating with the widow and heirs of Huston for the deed to Russell and in his behalf, not only understood that Sweezey was in possession under a claim of title which he would attempt to defend by law, but actually made these circumstances a ground for obtaining the deed to Russell on better terms. Sweezey was therefore not only in complete actual possession, which was enough to put the plaintiff upon inquiry, but the circumstance that he had possession under a claim of title was ascertained by the plaintiff's agent before he purchased; and the fact of such possession and claim being thus actually known to Hawes when negotiating for the deed to the plaintiff, must operate to charge the latter with knowledge of these circumstances thus known to Hawes. The plaintiff must accordingly be taken to have purchased of the widow and heirs of Huston while Sweezey was in possession claiming title, and also with full knowledge that Sweezey did so hold and claim. Under these circumstances it was clearly the duty of Russell, before completing his trade, to inquire of Sweezey as to his right and title, in order to maintain the position of a *bona fide* purchaser against the title under which Sweezey held and claimed. Such inquiries must presumably have resulted in exact information of the unrecorded deed from Huston to Brown, the deed from the latter to Fryer, and the right and title of Sweezey; and having omitted to make such inquiry the plaintiff was chargeable with notice of the facts, to which we must presume it would have led. This view, in our judgment, would be quite sufficient to decide the most essential points presented by this record. But the law does not stop here, and as we desire to prevent any question as to our opinion of the law applicable to this topic, and also preclude the supposition that we may not

have marked the exact position of plaintiff's counsel, we think it needful to refer to that position, and to state with brevity the principle just alluded to. The counsel argued that as a search in the registry only disclosed and could alone exhibit a tax-title in Sweezey, the plaintiff was equitably and legally justified in referring the possession and claim of Sweezey exclusively to such tax-title, and that Sweezey's possession being thus explained and accounted for by the record of the tax-title, and that only, the plaintiff was not put to inquire of Sweezey himself. We think this view wholly inadmissible, and have no hesitation in saying that the actual public and visible possession of Sweezey for a period beginning some time before and continuing up to the grant to Russell, was of itself notice to the latter of all of Sweezey's right, interest, claim and title, whether of record or otherwise, or whether founded on tax sales or deeds, or on agreements, or deeds of any kind.

The conclusion is inevitable, that it appeared on the trial beyond doubt, as it appears on this record, that when Russell purchased, and when he got his deed, he had notice of the prior unrecorded deed to Brown, and of Sweezey's title, and hence was not a *bona fide* purchaser as against such deed and title.

Upon the argument the plaintiff's counsel contended that this deed to Brown was void for uncertainty of description, because it did not expressly specify that the land was in this state.

This point was not made when the deed was offered in evidence, and it may be well questioned whether it is raised at all on this record. But assuming the point to be before us, we are clearly of opinion that it is destitute of force.

The grantor in that deed was the patentee of this land; and he is described in the deed as a resident of the county of Kalamazoo, which adjoins that in which this land is

situated. The grant was executed and acknowledged in the county of Kalamazoo, before an officer of that county, who attested its execution. The grantor is not shown to have been in any other state, or to have owned any other land. The patent specified the land as being in the district of lands subject to sale at Kalamazoo, Michigan, and the description in the deed in respect to the section and the subdivision of it, and also in respect to the township and range, agrees with the patent. Finally, the premises, about which the controversy arises, have for several years, if not for the whole time since the deed to Brown, been claimed and managed under the title made through that deed. These facts, we think, were sufficient to apply the deed to this property in Barry county, and to relieve the case from all doubt on this head, and more especially as no evidence was given on either side of a contrary tendency.—*Pursley v. Hayes, 22 Iowa, 11; Mecklem v. Blake, 19 Wis. R., 397; Ives v. Kimball, 1 Mich., 313.*

The circumstance that the record of this deed was made after the suit was commenced, was no objection to its admission. The only question was as to the effect of it as evidence of a prior deed which was unrecorded when the plaintiff purchased and when he put his deed on record, and this could not be determined in advance of the evidence upon which it must depend; and we have already seen that such evidence made it of vital force. The objections to the deed from Brown to Fryer, and that from Fryer to defendant were based on the false assumption that the deed to Brown was void, and of course cannot prevail.

The remaining questions which require any notice relate to the charge and refusals.

The plaintiff's counsel contends that in these the court erred. But we are not disposed to scrutinize these rulings, because we think the plaintiff was not prejudiced by them

if they were not accurate, since he made no case which could entitle him to a verdict.

The case as made on the trial was so clear and complete against him that it would not have been error if the court had directed the jury to find for the defendant.

The judgment must be affirmed with costs.

The other Justices concurred.