## HOWATT v. GREEN.

1. ADVERSE POSSESSION — HOSTILITY OF POSSESSION — NOTICE TO OWNER.

   When land is sold by one not in possession the purchaser is bound to ascertain the rights of the possessor.

2. SAME—RIGHTS OBTAINED BY PURCHASER.

   The suggestion that the purchaser of land from one out of possession acquires all the latter's rights, includiug the right to be informed of the possessor's hostile holding cannot be entertained.

3. SAME—SOURCE OF KNOWLEDGE.

   The knowledge of the hostile character of the possession of land necessary to set the statute of limitations in motion in favor of an adverse possessor need not proceed from the possessor nor any other particular source, it being sufficient if it come to the owner of the record title from any source whatsoever.

4. SAME—SETTING STATUTE IN MOTION.

   Where, when one purchased the legal title to land, another was in exclusive possession claiming ownership under a recorded warranty deed purporting to convey title in fee to him, such purchaser was charged with notice of the extent of the possessor's interest and the source of his title, and limitations then began to run in favor of the adverse possessor against the purchaser, although the latter did not actually know of the hostile possession, and although the hostile character of such possession was not known to his grantor, against whom it was originally merely permissive.

5. SAVING QUESTIONS FOR REVIEW — TESTIMONY — TRANSACTIONS WITH PERSON SINCE DECEASED.

   By failing to object to the introduction of testimony, its incompetency, under section 10212, 3 Comp. Laws, because relating to a transaction with a deceased person, is waived.

6. WITNESSES—CREDIBILITY.

   In a suit to remove a cloud from complainant's title, circumstances *held* to discredit the uncorroborated, though not directly contradicted, testimony of defendant's mediate grantor as to a lost lease.

   139 Mich.—19.

Appeal from Chippewa; Steere, J.   Submitted January 10, 1905.   (Docket No. 40.)   Decided March 7, 1905.

Bill by Charles Howatt and another against John H. Green and another to quiet title to land.   From a decree for complainants, defendant Green appeals.   Affirmed.

*Lanning, McMahon & Lyon,* for complainants.

*Oren, Webster & Carleton,* for appellant.

CARPENTER, J.   This is a bill to remove a cloud from complainants' title to lot 2 of Fourchette's Addition to the City of Sault Ste. Marie.   Complainants claim title by record and by adverse possession.   Defendants claim title by record, and deny complainants' adverse possession. As we believe that complainants have acquired title by adverse possession, it is unnecessary to determine, and we will not determine, who holds the record title.

The facts respecting adverse possession are these:   The original patent was granted May 6, 1873, to John Baptiste Le May, alias John Baptiste Kebec.   September 3, 1873, Le May transferred the land by warranty deed to Richard Payment (defendants' mediate grantor).   At the time of this conveyance one Michael Frichette or Fourchette (complainants' mediate grantor) was in possession of the land, claiming to own the same by a warranty deed of record given by one who does not appear to have had the title.   Frichette continued to occupy the land under this claim of ownership until a short time before his death, in 1890, when he conveyed the same by warranty deed to his daughter, Victoria Roberts.   Since that time the property has been in the possession of the various immediate and mediate grantees of said Frichette, who have paid the taxes assessed upon it, and who claim and have claimed to own it.

Frichette's possession of this land, which dates from 1851, presumably originated in the permission of the owner.   It

is contended that such owner never had knowledge of Frichette's hostile claim, and that the principle that possession does not in such cases become adverse until the owner has such knowledge (see *Ann Arbor Fruit & Vinegar Co.* v. *Railroad Co.*, 136 Mich. 599 [66 L. R. A. 431]), is a complete answer to complainants' claim of adverse possession. Assuming that there was no knowledge of Frichette's adverse possession before, the question arises whether such knowledge was not acquired at the time of Payment's purchase in 1873. At that time Frichette was in possession of the land, claiming to be the owner. We have held that, when land is sold by one not in possession, the purchaser is bound to ascertain the rights of the possessor. See *Allen* v. *Cadwell*, 55 Mich. 8; *Michie* v. *Ellair*, 54 Mich. 518.; *Seager* v. *Cooley*, 44 Mich. 14; *Hommel* v. *Devinney*, 39 Mich. 522; *Russel* v. *Sweezey*, 22 Mich. 235.

Upon the argument, counsel for defendants indicated his doubt of the application of the principle of these cases to the case at bar, suggesting that Payment acquired by his deed all of Le May's rights, included in which was the right to be informed of Frichette's hostile holding. We cannot accept this suggestion. Its force as an argument is based, in our judgment, upon the implied proposition that the information which charges an owner with knowledge that the possession originally rightful has become hostile must proceed from some particular source. This proposition is not sound. Knowledge is requisite in such cases, not because of the demerits of the adverse possessor, but because otherwise the rightful owner would be deprived of his property without any opportunity to assert his rights. It is not therefore necessary that that knowledge proceed from any particular source. It is not necessary that the adverse possessor give notice. If the owner acquire knowledge, no matter how, that the possession is hostile, the statute of limitations commences to run. See *Ann Arbor Fruit & Vinegar Co.* v. *Railroad Co.*, supra. It follows that any circumstance brought to the

owner's knowledge which proves to him that the possessor asserts a hostile title starts the running of the statute of limitations. It follows, too, that his accession to Le May's title did not exempt Payment from the consequences of any knowledge which proved to him that Frichette asserted a hostile claim.

Rejecting, as we must, therefore, the suggestion of defendants' counsel under consideration, no reason occurs to the court why such a purchaser as Payment is not presumed to know what all purchasers are presumed to know. Frichette was in exclusive possession, claiming to be the owner of this land. There was on record a warranty deed which purported to convey the title in fee. If Frichette's possession had at that time ripened into a complete title, no one would maintain that Payment did not have constructive notice of that title. Shall we then say that possession is constructive notice where the possessor's title is complete, but is not where that title is incomplete? Surely no such distinction can be maintained. Payment could not in law, then, be ignorant—and he was not in fact ignorant—of Frichette's exclusive possession of the land. With knowledge of this possession, it was Payment's duty to inquire of Frichette the extent of his interest and the source of his title, and he is chargeable with what he would have learned had he made this inquiry. See *Hommel* v. *Devinney* and *Russell* v. *Sweezey*, supra. We are by no means certain that Payment did not make this inquiry and learn the exact facts. But it is immaterial whether he did or not, since, as already stated, the law presumes such knowledge. We are bound to say, therefore, that Payment had notice at the time of his purchase in 1873 of Frichette's hostile holding, and, unless something occurred to prevent it, that the statute of limitations commenced to run at that time, and, long before this suit was commenced, made complainants' title unassailable by defendants.

It is claimed by defendants that at the time of Payment's purchase he made an arrangement with Frichette which prevented the operation of the statute of limitations. In a deposition, introduced in evidence in the court below without objection, Payment testified that at the time of his purchase he took steps to remove Frichette, and finally entered into a written lease, executed in duplicate, by which Frichette was to have possession of the property during his life and pay the taxes assessed against the property, and that he (Payment) had this lease until 1899, when it was destroyed by fire in his office and residence. Complainants urge that this testimony was prohibited by section 10212, 3 Comp. Laws, and that the court cannot therefore consider it. We think it a sufficient answer to this contention to say that, by failing to object to the introduction of this evidence, complainants waived the statutory prohibition and made the testimony admissible. *Ripley* v. *Seligman*, 88 Mich. 177.

If this testimony of Payment is credited, it affords a complete answer to complainant's claim of adverse possession. If such testimony is discredited, complainants' claim is established. The vital question in this case, then, is whether said testimony is entitled to credence. The trial court, as we infer, decided that it was not. We approve that decision. Ordinarily we do not state our reasons for crediting or discrediting a witness. But since in this case we discredit a witness who is not directly contradicted, we deem it proper to depart from our usual practice and state our reasons for not believing Payment's testimony respecting the execution of a lease by himself and Frichette.

If this testimony were true, we would expect it to be corroborated by some accompanying circumstance. The witness refers to no such corroborating circumstance, and the record shows none. No one appears to have known of any steps taken by Payment to oust Frichette. No one appear to have ever read or heard of this lease. Payment transferred his title by warranty deed in 1879, on which day it

came back to Payment's wife.   If this life lease was in existence it lessened Payment's title, and it is therefore difficult to understand why it was not mentioned in his warranty deed.   This life lease was the only evidence which proved that the party in possession did not own the land, and it is therefore singular that it was not shown to Payment's immediate and mediate grantees, and that they did not take it as part of their evidence of title.

There are other circumstances which make Payment's testimony appear improbable.   It is to be presumed that he made his arrangement with Frichette knowing that Frichette claimed the title, and for the purpose of having conclusive evidence to defeat that title.   By leaving Frichette in possession during his life with the obligation of paying the taxes, there was, so far as the world was concerned, the same indicia of ownership as before.   If, for the purpose of defeating Frichette's title, Payment made this arrangement, he would naturally have taken some step to make that arrangement notorious.   He might have had the lease attested by reliable subscribing witnesses, and had it acknowledged and recorded.   He appears to have done nothing of this nature.   He appears to have neglected all these precautions, and does not explain his neglect.

Neither is there a sufficient explanation why Payment did not assert a claim after Frichette's death, and before the lease was destroyed by fire.   Frichette died in 1890. The lease was not destroyed, according to Payment's testimony, until 1899.   During this long interval of nine years the title acquired by Payment was, as Payment knew, in his wife.   He was acting for her, and the situation made it his duty to assert her title.   He knew that some other person was paying taxes on the land, but he says that he did not learn of Frichette's death until 1902.   This last statement is scarcely credible, for he swears he " went to the Soo several times to see and look over the land," and the testimony shows that Frichette resided, at the time of his death, on property adjacent to that in contro-

versy.   If we believe that Payment was ignorant of Frichette's death until 1902, that continued ignorance is inconsistent with his possession of the lease.   If he had, as he testifies he had, the lease which gave his wife the right of possession on Frichette's death, his vigilance and diligence should have discovered that death, and asserted her title some time during the nine years which intervened before the lease was destroyed.

In short, it may be said of this testimony of Payment that it is precisely such testimony as might have been fabricated.   It is not corroborated by a single circumstance, and it is intrinsically improbable.   We cannot, therefore, believe that the lease upon which defendants rely to answer complainants' claim of adverse possession was ever executed.

It follows that, in our judgment, complainants have acquired a valid title by adverse possession, and the decree appealed from should be affirmed, with costs.

MOORE, C. J., and MONTGOMERY, OSTRANDER, and HOOKER, JJ., concurred.