941 P.2d 233

**STAT–O–MATIC RETIREMENT FUND,** Eddie Cantor Associates, Inc., Money Purchase Pension Plan, Jerome S. Shull & Associates, Plaintiffs–Appellees,

v.

**ASSISTANCE LEAGUE OF YUMA,** Defendant–Appellant.

No. 1 CA–CV 96–0178.

Court of Appeals of Arizona, Division 1, Department C.

March 27, 1997.

As Amended April 3, 1997.

Law Offices of Stephen P. Shadle by Gregory S. Byrd and Stephen P. Shadle, Yuma, for Plaintiffs–Appellees.

Law Offices of Larry W. Suciu by Barry Olsen, Yuma, for Defendant–Appellant.

## OPINION

THOMPSON, Presiding Judge.

If a creditor purchases non-residential real property at a trustee's sale, after default on the debt which the property secured, does the creditor take subject to a claim of adverse possession? We hold that until a party

has a possessory right to the real property which would allow a cause of action against an adverse possessor, the statute of limitations on an action for recovery for real property will not run. *See* Ariz.Rev.Stat. Ann. (A.R.S.) § 12–526(A). Accordingly, we affirm.

## FACTS AND PROCEDURAL HISTORY

The property at issue in this quiet title action is a section of a Yuma parking lot (parking lot). It is unclear exactly when adverse possession of the parking lot began. However, appellant Assistance League of Yuma (Assistance League) admitted at oral argument that the record was devoid of evidence indicating that the adverse possession began prior to the lien. The dispositive facts are undisputed.

On December 6, 1984, plaintiff Jerome S. Shull & Associates acquired an interest in real property including the disputed parking lot area by deed of trust; the deed of trust was a security interest on a $170,000 promissory note.

In April 1991, Shull & Associates assigned its beneficial interest to plaintiffs Stat-o-matic Retirement Fund and the Eddie Cantor Associates Inc. Money Purchase Pension Plan (the creditors). Subsequently, the debtor on the underlying note defaulted. As the highest bidder in the trustee's sale on May 26, 1992, the creditors acquired title by trustee's deed.

Assistance League claimed a portion of the parking lot by adverse possession. On December 12, 1994, a quiet title action was filed by plaintiffs. Plaintiffs next collectively filed a motion for summary judgment arguing that, as lienholders, the statute of limitations did not begin to run against them until they acquired the right of possession to the property at the trustee's sale. Assistance League countered that plaintiffs took the deed of trust subject to their adverse possession claim.[1] The trial court granted the summary judgment motion and quieted title to the

property in plaintiffs. Assistance League timely appealed.

## DISCUSSION

Assistance League makes three arguments in support of its adverse possession claim: (1) title owners who purchase at trustee's sale are not entitled to the same protections as lienholders; (2) "tacking" should apply against the creditors; and (3) plaintiffs took title subject to any claims that existed prior to the execution of the deed of trust, including its adverse possession claim. We disagree.

■ A claimant of title by adverse possession must show that the adverse possession was actual, open and notorious, hostile, under a claim of right and was exclusive and continuous for ten years. *Lewis v. Pleasant Country, Ltd.,* 173 Ariz. 186, 189, 840 P.2d 1051, 1054 (App.1992); A.R.S. §§ 12–521(A) and 12–526(A). We follow, as we must, the statute as enacted by the legislature

*A person who has a cause of action for recovery of any lands, tenements or hereditaments from a person having peaceable and adverse possession thereof, cultivating, using and enjoying such property, shall commence an action therefor within ten years after the cause of action accrues, and not afterward.*

A.R.S. § 12–526(A) (emphasis added). Claims of adverse possession are disfavored and the claimant bears the burden of proof. *Tenney v. Luplow,* 103 Ariz. 363, 367, 442 P.2d 107, 111 (1968).

### 1. Lienholder v. Title Holder

■ Plaintiffs assert that as former lienholders they had no right of possession of the property and no cause of action to eject adverse possessors and, therefore, they should not be penalized for having to foreclose after a default. For this proposition plaintiffs cite our opinion in *Berryhill v. Moore,* 180 Ariz. 77, 881 P.2d 1182 (App. 1994).

1. The trustee's deed included language which said the conveyance was "subject to the interest of claim in the trust property acquired prior to the recording of the aforementioned Deed of

Trust" and was "clear of all liens, claims or interest having priority subordinate to the aforementioned Deed of Trust."

Assistance League admits that lienholders are protected from adverse possession claims under *Berryhill,* but argues that plaintiffs are now title owners and not lienholders. Assistance League endorses the theory that since plaintiffs have "voluntarily" given up their protected status under *Berryhill* by taking title by trustee sale [2] they are subject to the same rules applicable to regular purchasers.[3] Assistance League argues that the creditors could have chosen to remain protected lienholders or alternatively to sue on the promissory note.[4]

The facts of *Berryhill* revolve around two neighboring pieces of property and a misidentified boundary line.[5] On an adverse possession claim this court treated the property titleholder differently than the property lienholder. After examining at least three potential lines of reasoning, we determined that, under Arizona's adverse possession statute, lienholders are not subject to adverse possession because they have no possessory interest in the occupied property. We specifically rejected as irreconcilable with the statute the notion that a lienholder must take notice of the rights of a person in possession of the premises at the time the lien is taken. *Berryhill,* 180 Ariz. at 88, 881 P.2d at 1193.

In *Berryhill* we cited A.R.S. § 12–526(A) and noted that the language of this statute "implies that only a person with a *present* right to recover land from an adverse possessor is required to begin an action to do so within the ten-year period." *Id.* at 88, 881 P.2d at 1193. The policy behind *Berryhill* protects a lienholder from losing value on a lien where he has no ability to protect the property from adverse possession. We see no valid reason why the law should protect current lienholders but punish them if the lien goes into default. We find the policy behind *Berryhill* is no less persuasive under the default scenario.

Both the plain language of A.R.S. § 12–526 and the policy promoted by *Berryhill* require that creditors who purchase at a trustee's sale be treated more like lienholders than typical title owners who are purely discretionary purchasers. We therefore endorse the sound reasoning announced over fifty years ago by a Texas court when analyzing a similar statute and similar facts:

> The rights, title and interest which [the adverse possessors] acquired by their peaceable and adverse possession of the land for the period provided by the statute *were only such rights as may have been possessed by a person* who had the right of action for the recovery of the land. What we have said and the expressions of the courts in the cases cited demonstrate, we think, that appellant was not such a person and that the statute relied upon by [adverse possessors] *does not include a mortgagee nor a purchaser of the land under a valid foreclosure of a mortgage until this purchase is complete and he acquires a right of action for the recovery of the land.*

*Broad v. Warnecke,* 144 S.W.2d 1005, 1008 (Tex.App.1940) (affirmed by 138 Tex. 631, 161 S.W.2d 453 (1942) (emphasis added) ("[b]eing only a mortgagee, J.W. Broad, during his lifetime, had no possessory right to

---

2. In a deed of trust such as the one under which the creditors were beneficiaries, the deed of trust conveys a power of sale of the trust property in the event the trustor defaults on the promissory note secured by the property. *See In re Bisbee,* 157 Ariz. 31, 34, 754 P.2d 1135, 1138 (1988) (in practical effect deed of trust is a mortgage). Pursuant to the power of sale in the deed of trust the creditors here took title.

3. A *bona fide* purchaser takes title subject to any adverse possession which commenced before the transfer of title. *Howatt v. Green,* 139 Mich. 289, 102 N.W. 734 (1905).

4. We are unconvinced that either of Assistance League's alternatives are viable or practical, but because of our decision here we need not decide whether lienholders would be able to protect themselves by staying lienholders or suing the defaulting title owner.

5. More specifically, the Berryhills sought to establish their ownership of a strip of land they had fenced by adverse possession and they named the titleholder (Moore) and the lienholders (Jacksons) as defendants. On appeal, this court affirmed the trial court's ruling for the Berryhills against Moore under a tacking theory, but held that because the Jacksons as mortgagees could not bring an action to quiet title, a lien claim to the disputed strip of land was not barred and the time limitations of A.R.S. § 12–526 had not begun to run against them.

the land until it was purchased by him at the trustee's sale. Without such right there was no foundation for a suit by him to recover the land")).

Thus, an adverse possessor succeeds only to such rights as the title owner had. Significantly, in this situation this means that an adverse possession is subject to the rights of a lienholder, to the same extent as is the person who gave the lien to secure a debt. The adverse possessor can have no more right to the property than the defaulting debtor/title owner.

The policy announced in *Broad v. Warnecke* is no less compelling when applied in Arizona:

> Were it otherwise, and especially if the law were such as [the adverse possessors] contend here that it is, *investors would hesitate long and seriously before investing in land securities in this State which mature more than ten years after date.* The right of action contemplated by the [adverse possession statute] means the right to institute and maintain a suit for the recovery of the land. J.W. Broad had no such right ... prior to the time the land was advertised and sold to him ... [t]he [earlier] note held by him and secured by the deed of trust had not matured. No right of action had accrued thereon and the holder of the indebtedness had no complaint upon which any kind of a suit could have been based.

*Id.* at 1007–08 (emphasis added) (citations omitted). Thus, under the above stated reasoning, the trial court is affirmed.

### 2. Tacking

Assistance League correctly states but misapplies the "tacking" doctrine by arguing that the creditors' time (during which they were adversely possessed against) should be "tacked" to that of the prior owners. The tacking doctrine is codified at A.R.S. § 12–521(B) and allows:

> one claiming title by adverse possession to add his period of possession to that of a prior adverse possessor or possessors in order to establish a continuous possession for the statutory period. 3 Am.Jur.2d Ad-

verse Possession § 59; 6 R. Powell's The Law of Real Property, Par. 1021 (ed.1968). *Cheatham v. Vanderwey,* 18 Ariz.App. 35, 37, 499 P.2d 986, 988 (App.1972). Assistance League is the adverse possessor. Assistance League, therefore, may be entitled to "tack" *its* time period to that of prior adverse possessors. Assistance League provides no legal authority to support its assertions that the tacking doctrine applies *against* title owners and lienholders. We are not aware of any such authority, and reject the assertion.

### 3. Who Takes Subject to Whom

Finally, Assistance League argues that plaintiffs bought at a default proceeding and take the property encumbered by an adverse possession claim which is nearing the statute of limitations. We disagree and remind Assistance League that all equities and policy decisions operate in favor of the title holder.

We support the rule that the adverse possessor can gain *no more* from the title owners than the title owner had himself. *See Berryhill,* 180 Ariz. at 88, 881 P.2d at 1193 (adverse possession is subject to the lien). *See, e.g., Bryan v. Reifschneider,* 181 Neb. 787, 150 N.W.2d 900 (1967) (adverse possession of farm road limited to that use); *West v. Moore,* 193 Tenn. 431, 246 S.W.2d 74, 75 (1952) ("a life estate may be acquired by adverse possession ... the extent of the estate is fixed by the claim of the possessor"); *Michigan Cent. R. Co. v. Garfield Petroleum Corp.,* 292 Mich. 373, 290 N.W. 833 (1940) (adverse possession of railroad's right of way results in right of way and does not include mineral rights to land); *United States v. 2,184.81 Acres,* 45 F.Supp. 681 (W.D.Ark.1942) (adverse possessor school district acquired land only for school purposes); 2 C.J.S. *Adverse Possession* § 249 (1972).

Assistance League is in the unfavored position of claiming by adverse possession. As announced above, lienholders and owners who take through default proceedings are afforded greater deference. As in *Berryhill,* if Assistance League had gained title to the disputed area by adverse possession *prior to the trustee's sale,* ownership of the area

would be subject to the lien on the property and the future possibility of foreclosure. Assistance League can take no more from the property owners than what the owners themselves had—property subject to a lien and the possibility of foreclosure for default.

## CONCLUSION

For the above stated reasons we affirm the trial court's ruling in favor of plaintiffs.

KLEINSCHMIDT and GRANT, JJ., concur.