NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

STEVEN P. BECK, et al., *Plaintiffs/Appellees*,

*v.*

RICHARD NEVILLE, et al., *Defendants/Appellants*.

No. 1 CA-CV 21-0197
FILED 4-26-2022

Appeal from the Superior Court in Maricopa County
No.  CV2019-013786
The Honorable Pamela S. Gates, Judge

**REVERSED AND REMANDED**

COUNSEL

Combs Law Group PC, Phoenix
By Christopher A. Combs, Darlene Z. Twiss
*Counsel for Defendants/Appellants*

Tully Bailey LLP, Phoenix
By Stephen W. Tully
*Co-Counsel for Plaintiffs/Appellees*

Hinshaw & Culbertson LLP, Phoenix
By  Bradley L. Dunn
*Co-Counsel for Plaintiffs/Appellees*

---

## MEMORANDUM DECISION

Presiding Judge Jennifer B. Campbell delivered the decision of the Court, in which Judge Randall M. Howe joined. Judge James B. Morse Jr. dissented.

---

**C A M P B E L L**, Judge:

¶1　　　　Richard and September Neville challenge the superior court's grant of summary judgment in a property boundary dispute with their neighbors Steven and Lesli Beck. For the following reasons, we reverse and remand for further proceedings.

## BACKGROUND

¶2　　　　The Nevilles and Becks purchased neighboring properties in 1998 and 2000, respectively. The Nevilles' property includes a parking space on the north side of their home. A gravel driveway leads from the residential street to the parking space.

¶3　　　　In 2004, contractors for the Becks installed concrete curbing on the north side of the gravel driveway. Because the curbing deviates from the recorded property line, the Nevilles' gravel driveway covers approximately 135 square feet of land held in record title by the Becks (the disputed land).

¶4　　　　Fifteen years after installation of the concrete curbing, contractors informed the Becks that they needed to extend drainage pipes on their property, necessitating the removal of the curbing. When the Becks notified the Nevilles of the planned work, the Nevilles asserted that they owned the disputed land via adverse possession or boundary by acquiescence.

¶5　　　　The Becks sued to quiet title to the disputed land shortly thereafter, and the Nevilles counterclaimed. On cross-motions for summary judgment, the superior court ruled in favor of the Becks and awarded them attorneys' fees under A.R.S. § 12-1103(B). This appeal followed.

## DISCUSSION

**¶6** In reviewing a grant of summary judgment, we view the facts and the reasonable inferences to be drawn from those facts in the light most favorable to the non-moving party. *Normandin v. Encanto Adventures, LLC*, 246 Ariz. 458, 460, ¶ 9 (2019). "We determine de novo whether any genuine issues of material fact exist and whether the [superior] court correctly applied the law." *Diaz v. Phoenix Lubrication Service, Inc.*, 224 Ariz. 335, 338 (App. 2010). Summary judgment is appropriate "if the moving party shows that there is no genuine dispute as to any material fact and the moving party is entitled to a judgment as a matter of law." Ariz. R. Civ. P. 56(a). Conversely, summary judgment is inappropriate if "the facts, even if undisputed, would allow reasonable minds to differ." *Nelson v. Phoenix Resort Corp.*, 181 Ariz. 188, 191 (App. 1994).

## I.	Adverse Possession

**¶7** Asserting the concrete curbing demarcated the parties' respective properties, the Nevilles contend that they adversely possessed the disputed land by "continuously maintain[ing] and us[ing] [it] within their gravel driveway to the exclusion of others" since 2004. While they concede they did not place the curbing and gravel on which their claim relies, they argue that the curbing has defined the northern boundary of the driveway since its installation.

**¶8** Adverse possession is "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another." A.R.S. § 12-521(A)(1). To successfully claim title by adverse possession, a claimant must demonstrate "that the adverse possession was actual, open and notorious, hostile, under a claim of right, and [] exclusive and continuous for ten years." *Stat-o-matic Ret. Fund v. Assistance League of Yuma*, 189 Ariz. 221, 222 (App. 1997); *see also* A.R.S. § 12-526(A). Whether these elements have been met generally presents questions of fact based on the circumstances of each case. *Sabino Town & Country Estates Ass'n v. Carr*, 186 Ariz. 146, 149 (App. 1996). Adverse possession claims are disfavored and must be proved by clear and convincing evidence. *Stat-o-matic*, 189 Ariz. at 222; *Sabino*, 186 Ariz. at 149.

**¶9** To satisfy the elements of open and notorious, a claimant must show he engaged in conduct that "put the true owner on notice that his land is held under an adverse claim of ownership." *Knapp v. Wise*, 122 Ariz. 327, 329 (App. 1979). While an "enclosure of land" by itself may provide the requisite notice, *id.*, the curbing at issue did not surround the

disputed land or otherwise bar the Becks from accessing it. *See State v. Lewis*, 236 Ariz. 336, 346, ¶ 42 (App. 2014) (citing dictionary definitions of "enclose"—"[t]o surround on all sides; close in" and "[t]o fence in so as to prevent common use") (citation omitted). Moreover, because *the Becks* installed the curbing, the Nevilles cannot rely on its mere installation as evidence they placed the Becks on notice of their adverse claim of ownership. Accordingly, to survive the Becks' motion for summary judgment, the Nevilles had to put forward evidence that they engaged in overt acts of ownership sufficient to put a reasonable property owner on notice of their adverse possession claim.

¶10        In support of their respective motions for summary judgment, the parties submitted separate and conflicting declarations.  The Nevilles averred that: (1) they "believed" the concrete curbing delineated the boundary line between the parties' properties since 2004; (2) "[o]n several occasions since" 2004, the Becks and their guests have attempted to park vehicles "on the Neville Driveway," and on each "known such occasion," Richard Neville "ordered" the Becks and their guests to remove their vehicles; (3) on one occasion, Steven Beck expressly asked for permission to park a vehicle "on the Neville Driveway" and Richard Neville refused his request; and (4) as part of landscaping work completed in 2014, the Becks removed the original concrete curbing and installed new curbing "in the same exact location."

¶11        In contravening declarations, the Becks avowed that: (1) they informed the Nevilles "of their non-ownership" of the disputed land in 2004, when the concrete curbing was incorrectly installed; (2) they have used the disputed land "on a regular basis without interference from the Nevilles" and have "parked cars" on the disputed land "on occasion"; (3) on several occasions, their guests have parked vehicles "on the [d]isputed [p]roperty without interference from the Nevilles"; and (4) their yard maintenance worker has regularly used the disputed land to access other portions of the Becks' property.

¶12        The dissent correctly notes that the disputed land comprises only a portion of the Nevilles' gravel driveway, and therefore the Nevilles' efforts to wholly exclude the Becks from parking on the gravel driveway does not, by itself, demonstrate that the Nevilles specifically excluded the Becks from the narrow strip that constitutes the disputed land. Importantly, however, the Becks unambiguously avowed that both they and their guests *parked vehicles* on the *disputed land*. Because the parties' competing declarations presented disputed facts, summary judgment was improper on the Nevilles' adverse possession claim.

## II.    Boundary by Acquiescence

**¶13**        Generally, a boundary can arise when adjoining landowners occupy their respective properties up to a certain, mutually recognized, and acquiesced-to line for a long period of time.  82 Am. Jur. Proof of Facts 3d 227, § 1 (2005). To prove a boundary by acquiescence, the claimant must establish "(1) occupation or possession of property up to a clearly defined line, (2) mutual acquiescence by the adjoining landowners in that line as the dividing line between their properties, and (3) continued acquiescence for a long period of time." *Mealey v. Arndt*, 206 Ariz. 218, 221, ¶ 13 (App. 2003).

**¶14**        The Becks contend the Nevilles cannot prevail on their boundary by acquiescence claim because "[t]he parties were always aware the curbing was not on the property line." The Becks cite dicta from a footnote in *Mealey* to argue that a "defendant can always defeat the claim of boundary by acquiescence by affirmatively proving that the location of the true boundary was known." 206 Ariz. at 221, ¶ 13 n.2.  But they did not show, as a matter of law, that the true boundary was known. Instead, they only presented evidence that the Nevilles were aware of the recorded property line in 1998, six years before the curbing was installed. The Becks cite no authority suggesting the Nevilles were obligated to determine whether the later-installed curbing aligned with the recorded property line. *Cf. Berryhill v. Moore*, 180 Ariz. 77, 82–83 (App. 1994) (mistake of fact by the claiming party does not defeat an adverse possession claim).

**¶15**        The Becks also contend that the curbing "does not meet the requirements for creating a boundary line sufficient to establish boundary by acquiescence," noting the superior court's finding that it "falls far short of creating a boundary line identified with certainty." Arizona law only requires that the purported boundary be "definite, visible, and clearly marked." *Mealey*, 206 Ariz. at 222, ¶ 15.  Photographs offered by both parties suggests the curbing could be all three. The Becks insist it "was and is for decorative purposes only," but the Nevilles presented evidence suggesting that the curbing visually defined the northern boundary of the gravel driveway leading to their gate.

**¶16**        The Becks go on to assert that the Nevilles presented no evidence to show they occupied the property up to the curbing line. Again, the Nevilles presented evidence that they (1) excluded the Becks from using the disputed land at various times and (2) continuously used the disputed land for parking as part of their gravel driveway. The Becks contend otherwise, but that disputed fact is for the trier of fact to resolve.

Accordingly, summary judgment was improper on the Nevilles' boundary by acquiescence claim.

¶17 The dissent implies that a boundary cannot form by acquiescence unless it protrudes from the ground.  In support of this proposition, it quotes Benjamin Franklin on hedges, Robert Frost on fences, and a collection of cases cited in *Mealey*. Good fences may make good neighbors, but good cases, not good quotes, make good law.[1]

¶18 Franklin's and Frost's musings on fences and hedges tell us little about whether a boundary may be formed by a fish house on a seashore, a trail between everchanging rockpiles, an aisle within an orchard, or even a fence hidden inside a hedge—the boundaries that were at issue in the cases cited in *Mealey*. 206 Ariz. at 222, ¶ 16; *see also Calthorpe v. Abrahamson*, 441 A.2d 284, 290 (Me. 1982) ("The erection of a fishhouse on the seashore simply does not indicate where the boundary was meant to be."); *Manz v. Bohara*, 367 N.W.2d 743, 748 (N.D. 1985) (holding trail between three rock piles too uncertain as boundary because one rock pile had been removed, other piles were continually widening, and trail regularly "move[d] from one location to another within those widths"); *Monroe v. Harper*, 619 P.2d 323, 325 (Utah 1980) ("The property here has trees within the disputed strip of land, but not on the supposed boundary."); *Platt v. Martinez*, 563 P.2d 586, 587 (N.M. 1977) (holding fence could not serve as boundary because it could not be seen from adjacent landowner's side "without 'crawling through the brush'").  The boundaries in these cases failed not because they lacked protruding markers like fences or hedges, but because the boundaries were not lines at all, were not constant, or were not clearly visible.

¶19 Nothing in the dissent's cited cases suggests that a tangible line in or on the ground cannot form a boundary by acquiescence if it is clear, visible, and enduring. *See also Mealey*, 206 Ariz. at 222, ¶ 15 ("[L]ine must be certain, well defined, and *in some fashion physically designated upon the ground*.") (internal quotation marks omitted and emphasis added). In fact, the gravel driveway in *Monroe* fell short not because of its lack of protrusion, but rather because it "parallel[ed] the disputed boundary but d[id] not mark it." 619 P.2d at 325. And the court in *Dowley v. Morency* affirmed the trial court's recognition of an on-ground boundary, holding

---

1 As Franklin himself said, "Well done is better than well said." Benjamin Franklin, *Poor Richard Improved, 1737* (B. Franklin 1737), https://founders.archives.gov/documents/Franklin/01-02-02-0028.

only that "the mere cutting of grass" did not prove a boundary contrary to the one established by extending a paint line that the parties agreed marked another portion of the boundary. 737 A.2d 1061, 1065–66, ¶¶ 4, 10–17 (Me. 1999).

¶20        In sum, good neighbors can agree to boundaries without fences or hedges. After all, even Robert Frost appeared capable of staying on one side of a line on the ground.[2]

## III.    Attorneys' Fees on Appeal

¶21        Both sides request their attorneys' fees incurred in this appeal under A.R.S. § 12-1103(B), which authorizes an award to the prevailing party in a quiet title action if certain prerequisites are met. *Cook v. Grebe*, 245 Ariz. 367, 369, ¶ 5 (App. 2018). Neither side has prevailed on its quiet title claim at this stage of the litigation. We therefore decline to award attorneys' fees.

## CONCLUSION

¶22        We reverse the grant of summary judgment, vacate the associated attorneys' fee award, and remand for further proceedings.

**M O R S E**, Judge, dissenting:

¶23        I respectfully dissent.  To claim property via adverse possession, one must make "an actual and visible appropriation of the land, commenced and continued under a claim of right inconsistent with and hostile to the claim of another."  A.R.S. § 12-521(A)(1).  Thus, the adverse possessor must possess the disputed land in an "actual, open and notorious, hostile," and "exclusive and continuous" manner for ten years. *Stat-o-matic Ret. Fund v. Assistance League of Yuma*, 189 Ariz. 221, 222 (App. 1997).  The superior court correctly granted summary judgment to the Becks because the Nevilles do not allege facts sufficient to meet this threshold.  First,

---

[2]        "The middle of the road is where the white line is—and that's the worst place to drive." William Safire, Safire's Political Dictionary 248 (5th ed. 2008) (quoting Robert Frost).

because the Nevilles did not place the pavers on the Becks' property they cannot rely on the curbing to show they did anything to claim ownership of the disputed land. Second, the Nevilles never allege that they laid gravel on the driveway or made any visible improvements to the Becks' property on the driveway consistent with claimed ownership. *Cf. Higginbotham v. Kuehn*, 102 Ariz. 37, 38-39 (1967) (affirming adverse possession when plaintiff tore down an old fence, installed a new "hogwire fence" along the disputed line, and completed various actual and visible acts on the land); *Inch v. McPherson*, 176 Ariz. 132, 134-35 (App. 1992) (affirming adverse possession where adverse possessors "laid down gravel for a driveway" from their house to the hedge and "regularly parked their car" on that driveway).

¶24　　　　Instead of alleging they did anything to change the boundary or alter the property consistent with their claim of ownership, the Nevilles rely on three allegations. First, they claim they prevented the Becks from parking on the driveway. Second, the Nevilles avowed that they parked vehicles on the driveway. Third, they claim they "maintained" the entire driveway, including the narrow strip of disputed property. These assertions fail to raise a material point of disputed fact necessary to defeat summary judgment.

¶25　　　　The Nevilles' claims that they ejected the Becks from the driveway, and that they used the driveway, do not demonstrate any open and notorious act hostile to the Becks' claim of ownership of the narrow strip of land along the driveway's edge. Nearly all of the driveway is indisputably the Nevilles' property and excluding the Becks from parking on the *driveway* is not the same as excluding them from the edge of the driveway that constitutes the *disputed land*. The Nevilles make no allegation, and there is nothing in the record, to show they specifically sought to exclude the Becks from the disputed land. Absent such an assertion, telling the Becks they cannot park on the driveway is not a material fact sufficient to defeat summary judgment. *See Knapp v. Wise*, 122 Ariz. 327, 329 (App. 1979) (stating the "question" in adverse-possession cases is whether the "acts of possession" are sufficient to "put the true owner on notice that his land is held under an adverse claim of ownership").

¶26　　　　The majority notes a factual inconsistency about *where* the Becks parked their cars (the driveway or the disputed land). *Supra* ¶ 12. But such dispute is immaterial when the Nevilles fail to allege facts showing they put the Becks on notice by openly, notoriously, and exclusively claiming possession of the narrow strip of disputed land. *Knapp*, 122 Ariz. at 329; *see also Orme Sch. v. Reeves*, 166 Ariz. 301, 311 (1990) ("[I]t would effectively abrogate the summary judgment rule to hold that the motion

should be denied simply on the speculation that . . . some dispute over irrelevant or immaterial facts might blossom into a real controversy in the midst of trial.").

¶27        Moreover, the Nevilles' allegation that they "maintained" the driveway is not supported by any admissible evidence presented at summary judgment.  And, even if they had made such a claim in their declarations, a vague claim of maintaining property does not provide evidence of a claim to ownership hostile to the Becks' claim and cannot be sufficient to put the Becks on notice that they might lose their property. *Knapp*, 122 Ariz. at 329; *see also Badia v. City of Casa Grande*, 195 Ariz. 349, 357, ¶ 29 (App. 1999) ("Sheer speculation is insufficient . . . to defeat summary judgment.").

¶28        The Nevilles fare no better with boundary by acquiescence because the curbing does not define the Neville-Beck property line with sufficient certainty.  *See Mealey v. Arndt*, 206 Ariz. 218, 222, ¶ 15 (App. 2003) ("A party cannot be said to acquiesce in a boundary unless the boundary can be identified with certainty.").  Benjamin Franklin wrote "[l]ove your neighbor; yet don't pull down your Hedge,"[3] and Robert Frost suggests that "[g]ood fences make good neighbors."[4]  But the Neville-Beck property line lacks either fences or hedges.  *See Mealey*, 206 Ariz. at 222, ¶ 15 (collecting cases where boundary marked by fences, monuments, roadways, or buildings); *see also Dowley v. Morency*, 737 A.2d 1061, 1067, ¶ 16 (Me. 1999) (holding "mere cutting of grass is insufficient to produce a visible line of occupation").  The majority posits that landowners may agree that a painted line marks a property boundary.  *Supra* ¶ 19; *see Dowley*, 737 A.2d at 1066, ¶ 10 ("There is also no dispute that the [orange paint] blaze line marks the common boundary . . . .").  But the majority fails to explain why that matters. In *Dowley*, rather than relying on an agreed upon painted boundary, the court rejected a claim for boundary by acquiescence at the unpainted border, noting the lack of "any other monument, fence, or the like serving as indicia of a line of occupation."  737 A.2d at 1067, ¶ 17.

¶29        Ultimately, even if a painted line or line of pavers can mark a property line in Arizona, the Nevilles fail to establish "mutual acquiescence" in the claimed boundary.  *See Mealey*, 206 Ariz. at 221, ¶ 13. To the contrary, the Becks asserted that the true boundary line was known. *See Argyle v. Jones*, 118 P.3d 301, 305, ¶ 15 (Utah Ct. App. 2005) (identifying

---

3      Benjamin Franklin, *Poor Richard Improved, 1754* (B. Franklin & D. Hall 1754), https://founders.archives.gov/documents/Franklin/01-05-02-0051.

4      Robert Frost, Mending Wall, in North of Boston (1914).

factors inconsistent with acquiescence such as contact, "however minimal," and "knowledge of the true boundary"). And the record lacks any evidence from which a jury could infer that the Becks acquiesced to their landscaping feature becoming the new property line. *See Mealey*, 206 Ariz. at 222, ¶ 16 (noting case in which an "orchard and gravel driveway" did not support boundary by acquiescence (citing *Monroe v. Harper*, 619 P.2d 323, 324-25 (Utah 1980)); *see also McGlothlin v. Livingston*, 276 P.3d 1042, 1049, ¶¶ 28-30 (Okla. Civ. App. 2011) (concluding no boundary by acquiescence when landowner "maintained the fence to contain their cattle and not to establish a boundary").

¶30 For the foregoing reasons, I agree with the superior court that the Nevilles presented insufficient evidence to support a claim for adverse possession or boundary by acquiescence.

